## Matter of Leroinex LOUISSAINT, Respondent

File A072 033 702 - Miami, Florida

*Decided March 18, 2009*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

(1)  The categorical approach for determining if a particular crime involves moral turpitude set forth in *Matter of Silva-Trevino*, 24 I&N Dec. 687 (A.G. 2008), requires the traditional categorical analysis, which was used by the United States Supreme Court in *Gonzales v. Duenas-Alvarez*, 549 U.S. 183 (2007), and includes an inquiry into whether there is a "realistic probability" that the statute under which the alien was convicted would be applied to reach conduct that does not involve moral turpitude.

(2)  A conviction for burglary of an occupied dwelling in violation of section 810.02(3)(a) of the Florida Statutes is categorically a conviction for a crime involving moral turpitude. *Matter of M-*, 2 I&N Dec. 721 (BIA; A.G. 1946), distinguished.

FOR RESPONDENT:  Joann M. Hennessey, Esquire, Miami, Florida

FOR THE DEPARTMENT OF HOMELAND SECURITY:  Steven R. Parrish, Assistant Chief Counsel

BEFORE:  Board Panel:  COLE and HESS, Board Members.  Concurring Opinion: PAULEY, Board Member.

COLE, Board Member:

In a decision dated April 21, 2008, an Immigration Judge found that the respondent is not inadmissible under section 212(a)(2)(A)(i)(I) of the Immigration and Nationality Act, 8 U.S.C. § 1182(a)(2)(A)(i)(I) (2006), as an alien convicted of a crime involving moral turpitude, and terminated the removal proceedings.  The Department of Homeland Security ("DHS") has appealed from that decision.  The appeal will be sustained, the proceedings will be reinstated, and the record will be remanded to the Immigration Judge.

## I.  FACTUAL AND PROCEDURAL HISTORY

The respondent is a native and citizen of Haiti who was granted lawful permanent resident status on or about January 8, 2001.  The record reflects that on August 27, 2001, he committed the offense of burglary in Florida.  On

August 16, 2002, the respondent was convicted of second degree burglary of an occupied dwelling in violation of section 810.02(3)(a) of the Florida Statutes, for which he was sentenced to 2 years' probation.

On September 3, 2007, the respondent was detained at the Miami International Airport upon returning to the United States. The DHS initiated removal proceedings against the respondent, charging that he is inadmissible on the basis of his burglary conviction. The Immigration Judge concluded that the respondent's conviction was not for a crime involving moral turpitude and therefore would not render him inadmissible under section 212(a)(2)(A)(i)(I) of the Act. The proceedings were accordingly terminated.[1]

## II. ISSUE

The only issue on appeal is whether the Immigration Judge erred in concluding that the respondent's conviction for the offense of burglary of an occupied building in violation of section 810.02(3)(a) of the Florida Statutes was not a conviction for a crime involving moral turpitude.

## III. ANALYSIS

The relevant Florida statutes relating to the crime of burglary of a dwelling provide, in pertinent part, as follows:

> (1)(b) For offenses committed after July 1, 2001, "burglary" means:
> 1. Entering a dwelling, a structure, or a conveyance with the intent to commit an offense therein, unless the premises are at the time open to the public or the defendant is licensed or invited to enter . . . .
>  . . . .
> (3) Burglary is a felony of the second degree . . . if, in the course of committing the offense, the offender does not make an assault or battery and is not and does not become armed with a dangerous weapon or explosive, and the offender enters or remains in a:
> (a) Dwelling, and there is another person in the dwelling at the time the offender enters or remains . . . .

Fla. Stat. §§ 810.02(1)(b), (3)(a) (2001).

The Immigration Judge relied on *Matter of M-*, 2 I&N Dec. 721 (BIA, A.G. 1946), in concluding that the determinative factor in deciding whether the

---

[1] The DHS also alleged that the respondent is inadmissible under section 212(a)(2)(A)(i)(I) of the Act on account of his December 11, 2001, conviction for resisting an officer with violence to his or her person in violation of section 843.01 of the Florida Statutes. Although the Immigration Judge determined that this offense was not a crime involving moral turpitude, the DHS did not contest that finding on appeal.

respondent's offense was a crime involving moral turpitude was whether the crime he intended to commit after breaking into a residence involved moral turpitude. In *Matter of M-*, we held that third degree burglary in violation of section 404 of the New York Penal Law[2] was not a crime involving moral turpitude. We indicated that we did not consider such an offense to be inherently immoral, base, vile, or depraved, because a person could be convicted under that statute for simply pushing ajar the unlocked door of an unused structure and putting one's foot across the threshold. *Id.* at 723. Thus, we determined that it is only the particular crime that accompanies or precedes the act of breaking out that has any significance in determining whether third degree burglary under New York law involves moral turpitude. Because the record of conviction in the case before us did not indicate the particular offense that accompanied the breaking and entering, the Immigration Judge found that it did not demonstrate whether the respondent's underlying offense involved moral turpitude. He therefore concluded that the DHS failed to sustain its burden of establishing that the respondent is inadmissible under section 212(a)(2)(A)(i)(I) of the Act.

Although our decision in *Matter of M-*, *supra*, indicates that third degree burglary of a building under New York law is not itself a crime involving turpitude, we also noted in that case that the offense differed in several material respects from common law burglary, which is defined as the breaking and entering of the dwelling house of another in the nighttime with intent to commit a felony. In addition, we specifically noted that we were not determining whether first or second degree burglary involved moral turpitude. We therefore find that our holding in *Matter of M-*, which involved a third degree burglary offense, is distinguishable because the offense at issue here is second degree burglary under section 810.02(3)(a) of the Florida Statutes, which involves the burglary of an occupied dwelling.

Additionally, during the pendency of this appeal, the Attorney General issued a comprehensive decision clarifying the concept of moral turpitude and articulating a methodology for determining whether a particular offense is a crime involving moral turpitude. *Matter of Silva-Trevino*, 24 I&N Dec. 687 (A.G. 2008). According to the Attorney General, a crime involving moral

---

[2]  Section 404 of the New York Penal Law provided as follows:
   A person who:
      1. With intent to commit a crime therein, breaks and enters a building, or a room, or any part of a building; or,
      2. Being in any building, commits a crime therein and breaks out of the same, is guilty of burglary in the third degree.

turpitude involves reprehensible conduct committed with some degree of scienter, either specific intent, deliberateness, willfulness, or recklessness. *Id.* at 706 & n.5.

In considering whether a particular offense constitutes a crime involving moral turpitude, we must first engage in the traditional categorical analysis of the elements of the statute. *See Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 186 (2007) (citing *Taylor v. United States*, 495 U.S. 575, 599-600 (1990), as stating that in determining whether a particular conviction is for a certain type of offense, a court should normally look "not to the facts of the particular prior case," but rather to the statute defining the crime of conviction). In *Matter of Silva-Trevino*, *supra*, the Attorney General found that the "categorical inquiry" also requires an examination of the law of the convicting jurisdiction to determine whether there is a "'realistic probability,'" as opposed to a "'theoretical possibility,'" that the statute under which the alien was convicted would be applied to reach conduct that does not involve moral turpitude. *Id.* at 698 (quoting *Gonzales v. Duenas-Alvarez*, *supra*, at 193). This requires asking whether, at the time of the alien's removal proceedings, any actual (as opposed to hypothetical) case exists in which the relevant criminal statute was applied to conduct that did not involve moral turpitude. If the statute has not been so applied in any actual case, the Immigration Judge, in applying the "realistic probability" method, may reasonably conclude that all convictions under the statute may categorically be treated as ones involving moral turpitude.

Should the language of the criminal statute encompass both conduct that involves moral turpitude and conduct that does not, however, and there is a case in which the relevant criminal statute has been applied to the latter category of conduct, the Immigration Judge cannot categorically treat all convictions under that statute as convictions for crimes that involve moral turpitude. *Matter of Silva-Trevino*, *supra*, at 697. Should such an inquiry reveal that there is, in fact, a realistic probability that the statute would reach offenses that are not turpitudinous, we must then engage in a "modified categorical inquiry" in which we examine the record of conviction, including documents such as the indictment, the judgment of conviction, jury instructions, a signed guilty plea, and the plea transcript, in order to determine whether the particular conviction in question was for a morally turpitudinous offense. *Id.* at 698-99. Finally, if consideration of the conviction record does not reveal whether the alien's particular offense involved moral turpitude, we may then consider any other admissible evidence bearing on that question. *Id.* at 699-704. Applying the foregoing methodology to the facts of this case, we conclude that the respondent has been convicted of a crime involving moral turpitude.

As we noted previously, the respondent was convicted of the offense of burglary of an occupied building in violation of section 810.02(3)(a) of the Florida Statutes. By judicial construction, burglary, as defined at section 810.02(1)(b) of the Florida Statutes, has been interpreted by the Florida courts to require three essential elements: "'(1) knowing entry into a dwelling, (2) knowledge that such entry is *without permission*, and (3) criminal intent to commit an offense within the dwelling.'" *M.E.R. v. State*, 993 So.2d 1145, 1146 (Fla. Dist. Ct. App. 2008) (emphasis added) (quoting *R.J.K. v. State*, 928 So.2d 499, 502 (Fla. Dist. Ct. App. 2006)); *see also D.R. v. State*, 734 So.2d 455, 457 (Fla. Dist. Ct. App. 1999); *T.S.J. v. State*, 439 So.2d 966, 967 (Fla. Dist. Ct. App. 1983).[3] By specifically excusing entry into properties open to the public and licensed or invited entries onto property under the definition of burglary, section 810.02(1)(b) necessarily incorporates unlawful entry as an element of the offense. *See* Fla. Stat. § 810.015(3) (2004) (stating that consent is an affirmative defense to burglary and nullifying *Delgado v. State*, 776 So.2d 233 (Fla. 2000)); *Miller v. State*, 733 So.2d 955, 957 (Fla.1998) ("[I]f a defendant can establish that the premises were open to the public, then this is a *complete* defense."); *Robertson v. State*, 699 So.2d 1343, 1346 (Fla. 1997) (noting that consent is an affirmative defense to a charge of burglary); *see also P.D.T. v. State*, 996 So.2d 919, 919 (Fla. Dist. Ct. App. 2008) (finding that to establish the crime of burglary of a dwelling in Florida, the State must prove that the defendant either (1) entered a dwelling *without permission* and with the intent to commit an offense therein or (2) following an invited entry, remained in the dwelling surreptitiously, or after permission to remain had been withdrawn, with the intent to commit an offense therein). A conviction under section 810.02(3)(a) requires, as an additional material element, proof that the burglary took place in a dwelling occupied by another person at the time the offender entered or remained.

We conclude that the conscious and overt act of unlawfully entering or remaining in an occupied dwelling with the intent to commit a crime is inherently "reprehensible conduct" committed "with some form of scienter," as required by *Matter of Silva-Trevino*, *supra*, at 706 & n.5. By breaking into a dwelling of another for an illicit purpose, the burglar tears away the resident's justifiable expectation of privacy and personal security and invites

---

[3] Although it is not dispositive, we find it instructive that the elements of the Florida statute prohibiting burglary of a dwelling correspond to the generic definition of burglary adopted by the United States Supreme Court in *Taylor v. United States*, *supra*, at 599 (defining "burglary" as "any crime, regardless of its exact definition or label, having the basic elements of unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime"). *See also United States v. Bennett*, 472 F.3d 825, 832 (11th Cir. 2006) (adopting the *Taylor* definition of generic burglary).

a violent defensive response from the resident.  As the United States Supreme Court has found, "The main risk of burglary arises not from the simple physical act of wrongfully entering onto another's property, but rather from the possibility of a face-to-face confrontation between the burglar and a third party—whether an occupant, a police officer, or a bystander—who comes to investigate." *James v. United States*, 550 U.S. 192, 127 S. Ct. 1586, 1594 (2007) (construing attempted burglary, as defined by Florida Statutes sections 810.02(1) and 777.04(1), as a "violent felony" under a residual provision of the Armed Career Criminal Act, 18 U.S.C. § 924(e)).  Moreover, the United States Court of Appeals for the Eleventh Circuit, in whose jurisdiction this proceeding arises, has recognized the peculiar dangers inherent in residential burglaries such as the one involved in this case.  *See United States v. Davis*, 881 F.2d 973, 976 (11th Cir. 1989) ("'No one has doubted for decades that *residential* burglary is a "violent" offense, because of the potential mayhem if burglar encounters resident.'" (quoting *United States v. Pinto*, 875 F.2d 143, 144 (7th Cir. 1989), in concluding that burglary of a dwelling under section 810.02(3) constitutes a crime of violence for purposes of the United States Sentencing Guidelines)).

Our examination of the statutory elements of residential burglary under Florida law persuades us that there is no "realistic probability" that section 810.02(3)(a), which involves the unlawful entry into an occupied dwelling, would be applied to reach conduct that does not involve moral turpitude, and that the offense, as defined by its statutory elements, is one in which moral turpitude necessarily inheres.[4]  We therefore reject the Immigration Judge's decision, which was based on *Matter of M-*, *supra*, and issued before the Attorney General's opinion in *Matter of Silva-Trevino*, *supra*, that a residential burglary derives its morally turpitudinous nature solely from the culpability inherent in the crime that accompanies or precedes the act of breaking and entering a building.  We find, to the contrary, that moral turpitude is inherent in the act of burglary of an occupied dwelling itself, and that the respondent's unlawful entry into the dwelling of another with the intent to commit *any crime* therein is a crime involving moral turpitude.

---

[4]  As an alien charged with inadmissibility under section 212(a)(2)(A)(i)(I) of the Act, the respondent bears the burden of showing that the criminal statute under which he was convicted has been applied to conduct that did not involve moral turpitude. *See Matter of Silva-Trevino*, *supra*, at 703-04 n.4 (applying the realistic probability approach).  We are unaware of any existing (as opposed to hypothetical) Florida case where section 810.02(3)(a) has been applied to conduct that is not turpitudinous.  The respondent may file a timely motion to reopen if he has evidence of such a case.

## IV.  CONCLUSION

Based on intervening law, we conclude that the Immigration Judge erred in finding that the offense of burglary of an occupied building in violation of section 810.02(3)(a) of the Florida Statutes is not a crime involving moral turpitude under the immigration laws.  We therefore find that the respondent is inadmissible under section 212(a)(2)(A)(i)(I) of the Act.  Accordingly, the DHS's appeal will be sustained, the removal proceedings will be reinstated, and the record will be remanded to the Immigration Judge for consideration of any relief from removal for which the respondent may be eligible.

**ORDER:** The appeal of the Department of Homeland Security is sustained, the decision of the Immigration Judge is vacated, and the removal proceedings against the respondent are reinstated.

**FURTHER ORDER:** The record is remanded to the Immigration Judge for further proceedings consistent with the foregoing opinion and for the entry of a new decision.

*CONCURRING OPINION*:  Roger A. Pauley, Board Member

I respectfully concur.  I agree with the majority that *Matter of Silva-Trevino*, 24 I&N Dec. 687 (A.G. 2008), altered the framework under which the Board of Immigration Appeals and the Immigration Judges are directed henceforth to make decisions as to whether certain crimes involve moral turpitude.  I also agree with the majority that the instant offense is a categorical crime involving moral turpitude.

In the event *Matter of Silva-Trevino*, *supra*, fails to find acceptance in the courts of appeals, I write to indicate that, even under the law as it existed prior to *Silva-Trevino*, I would find this offense to be turpitudinous.  The home is an area of utmost privacy, uniquely protected under our law.  *E.g.*, *Payton v. New York*, 445 U.S. 573 (1980) (requiring a warrant for arrest of a homeowner in his home).  A breach of that zone through an unlawful entry or remaining, with intent to commit a crime, is so far removed from societal norms as to constitute a turpitudinous offense no matter what the intended crime.  For like reason, I disagree with the decision of the United States Court of Appeals for the Ninth Circuit in *Cuevas-Gaspar v. Gonzales*, 430 F.3d 1013 (9th Cir. 2005), which found that a home burglary was not a categorical crime involving moral turpitude.  *See id.* at 1030-31 (Fernandez, J., dissenting) (stating that "the intrusion into someone's home with the intent to commit a crime therein is a categorically depraved act").  As does the majority, I regard *Matter of M-*, 2 I&N Dec. 721 (BIA, A.G. 1946), which was approved by the

Attorney General, *id.* at 730, and on which the Immigration Judge relied, as distinguishable because it did not involve burglary of a dwelling.

But to the extent that *Matter of M-*, *supra*, may stand as a barrier to such a conclusion, I would urge the Attorney General at a minimum to modify that decision to exclude therefrom burglaries of the home. Moreover, the broader rationale of *Matter of M-*, under which a burglary becomes a crime involving moral turpitude only if the crime intended is such, should be discarded. That mode of analysis completely discounts the trespassory element in any burglary (i.e., an unlawful entry or remaining within premises). While trespass alone may not be turpitudinous, that does not mean the violation of privacy (and sometimes incidental destruction of property) inherent in trespass should be totally disregarded in making a crime involving moral turpitude calculus. For example, while drug possession or use may not involve moral turpitude, breaking into another's car or shed in order to avoid detection while illegally using drugs may well be. Accordingly, I would abandon the rationale undergirding *Matter of M-* even if *Matter of Silva-Trevino* had not intervened.