# Matter of J-G-D-F-, Respondent

*Decided August 18, 2017*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

Burglary of a dwelling in violation of section 164.225 of the Oregon Revised Statutes is a crime involving moral turpitude, even though the statute does not require that a person be present at the time of the offense, provided that the dwelling is at least intermittently occupied.

FOR RESPONDENT: N. David Shamloo, Esquire, Portland, Oregon

FOR THE DEPARTMENT OF HOMELAND SECURITY: Sarah C. Lara, Assistant Chief Counsel

BEFORE: Board Panel: PAULEY, WENDTLAND, and O'CONNOR, Board Members.

PAULEY, Board Member:

In a decision dated February 29, 2016, an Immigration Judge determined that the respondent is removable under section 212(a)(2)(A)(i)(I) of the Immigration and Nationality Act, 8 U.S.C. § 1182(a)(2)(A)(i)(I) (2012), as an alien convicted of a crime involving moral turpitude. The Immigration Judge issued a second decision dated May 5, 2016, in which she denied the respondent's applications for cancellation of removal, asylum, withholding of removal, and protection under the Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, *adopted and opened for signature* Dec. 10, 1984, G.A. Res. 39/46, 39 U.N. GAOR Supp. No. 51, at 197, U.N. Doc. A/RES/39/708 (1984) (entered into force June 26, 1987; for the United States Apr. 18, 1988) ("Convention Against Torture"), but granted his application for voluntary departure. The respondent has appealed from that decision. The appeal will be dismissed.

## I. FACTUAL AND PROCEDURAL HISTORY

The respondent is a native and citizen of Mexico who entered the United States without inspection at an unknown time and place. He was convicted of burglary in the first degree in violation of section 164.225 of the Oregon Revised Statutes on April 9, 1999, and March 19, 2002.

The Department of Homeland Security ("DHS") initiated removal proceedings against the respondent, charging him with removability under section 212(a)(2)(A)(i)(I) of the Act based on his convictions and under section 212(a)(6)(A)(i), as an alien who is present in the United States without being admitted or paroled. The respondent conceded that he is inadmissible because of his unlawful presence but denied inadmissibility under section 212(a)(2)(A)(i)(I) of the Act.

## II. ANALYSIS

### A. Crime Involving Moral Turpitude

To determine whether the respondent's burglary offense is a crime involving moral turpitude under section 212(a)(2)(A)(i)(I) of the Act, we employ the "categorical approach" by "comparing the elements of the state offense to those of the generic [definition of a crime involving moral turpitude] to determine if there is a categorical match." *Escobar v. Lynch*, 846 F.3d 1019, 1024 (9th Cir. 2017) (citations omitted). "This [approach] requires us to focus on the minimum conduct that has a realistic probability of being prosecuted under the statute of conviction, rather than on the facts underlying the respondent's particular violation of that statute." *Matter of Silva-Trevino*, 26 I&N Dec. 826, 831 (BIA 2016); *see also Escobar*, 846 F.3d at 1024.

"Although the immigration statutes do not specifically define offenses constituting crimes involving moral turpitude, a crime involving moral turpitude is generally a crime that '(1) is vile, base, or depraved and (2) violates accepted moral standards.'" *Escobar*, 846 F.3d at 1023 (citations omitted); *see also Matter of Silva-Trevino*, 26 I&N Dec. at 834 ("To involve moral turpitude, a crime requires two essential elements: reprehensible conduct and a culpable mental state.").

The respondent argues that the crime defined in section 164.225 of the Oregon Revised Statutes is broader than the generic definition of a crime involving moral turpitude in section 212(a)(2)(A)(i)(I) of the Act. Specifically, he argues that a violation of the statute does not necessarily involve reprehensible conduct or a culpable mental state since it does not require that a defendant unlawfully enter a dwelling or intend to commit a crime involving moral turpitude at the time he or she enters the building.[1]

---

[1] To the extent that the respondent asserts that section 212(a)(2)(A)(i)(I) of the Act is invalid because the phrase "crime involving moral turpitude" is unconstitutionally vague, it is well settled "that as a general matter, we may not entertain constitutional challenges to the provisions of the Act." *Matter of Calcano de Millan*, 26 I&N Dec. 904, 911 (BIA

The DHS contends that first degree burglary under Oregon law is categorically a crime involving moral turpitude because it necessarily involves the burglary of a dwelling with the intent to commit a crime therein. Whether the respondent's offense is a crime involving moral turpitude is a question of law that we review de novo. 8 C.F.R. § 1003.1(d)(3)(ii) (2017).

At all relevant times, section 164.225 of the Oregon Revised Statutes provided as follows, in pertinent part:

> (1) A person commits the crime of burglary in the first degree if the person violates ORS 164.215 and the building is a *dwelling*, or if in effecting entry or while in a building or in immediate flight therefrom the person:
>> (a) Is armed with a burglar's tool as defined in ORS 164.235 or a deadly weapon; or
>> (b) Causes or attempts to cause physical injury to any person; or
>> (c) Uses or threatens to use a dangerous weapon.

(Emphasis added.) Section 164.215 provided, in turn, that

> a person commits the crime of burglary in the second degree if the person *enters or remains unlawfully* in a building with intent to commit a crime therein.

(Emphasis added.)[2] Under section 164.205(2), the term "dwelling" means

> a building which *regularly or intermittently is occupied* by a person lodging therein at night, whether or not a person is actually present.

---

2017). Moreover, the Supreme Court has previously held that the meaning of the phrase "crime involving moral turpitude" is sufficiently definite to withstand constitutional scrutiny. *See Jordan v. De George*, 341 U.S. 223, 229–32 (1951).

[2] At the time of the respondent's 1999 conviction, section 164.205(3) of the Oregon Revised Statutes defined the phrase "Enter or remain unlawfully" as follows:

> (a) To enter or remain in or upon premises when the premises, at the time of such entry or remaining, are not open to the public *or* when the entrant is not otherwise licensed or privileged to do so; or
> (b) To fail to leave premises that are open to the public after being lawfully directed to do so by the person in charge.

(Emphasis added.) The word "or" between the clauses "are not open to the public" and "when the entrant is not otherwise licensed or privileged to do so" in section 164.205(3)(a) has been construed by Oregon courts as being conjunctive rather than disjunctive. *See State v. Collins*, 39 P.3d 925, 929 (Or. Ct. App. 2002) (citing *State v. Hartfield*, 624 P.2d 588, 594–95 (Or. 1981) (en banc)). Moreover, as the court in *Collins* noted, the legislative history of the statute indicates that earlier drafts included the word "and," rather than "or." *Id.* at 393. So does the current version of section 164.205(3)(a) following its amendment in 2015. We are therefore unpersuaded by the respondent's contention that his violation of section 164.225 did not necessarily involve an unlawful entry or remaining.

(Emphasis added.)

Thus, a person commits first degree burglary under section 164.225 of the Oregon Revised Statutes by either (1) entering or remaining unlawfully in a building that is a *dwelling* with the intent to commit a crime; or (2) unlawfully entering or remaining in a *building*, while carrying a burglar's tool or deadly weapon, causing or attempting to cause injury to any person, or using or threatening to use a dangerous weapon. *United States v. Mayer*, 162 F. Supp. 3d 1080, 1089 (D. Or. 2016). We need not determine whether both prongs of the statute define a crime involving moral turpitude, because the statute is divisible with respect to whether a first degree burglary offense involved entering or remaining unlawfully in a dwelling, as opposed to a building other than a dwelling. *Id.* ("Clearly, the statute provides alternative elements of functionally separate crimes; one that involves a dwelling and others that do not." (citing Oregon Uniform Criminal Jury Instructions 1901 (stating the elements for a violation of section 164.225 involving entering or unlawfully remaining in a dwelling) and 1902 (same with regard to a building other than a dwelling)); *see also Mathis v. United States*, 136 S. Ct. 2243, 2249 (2016) (deeming a statute to be divisible if "it list[s] elements in the alternative, and thereby define[s] multiple crimes").[3]

Because the respondent's statute of conviction is divisible, the Immigration Judge was permitted to employ a modified categorical inquiry to determine whether the respondent was convicted of unlawfully entering or remaining in a "dwelling" with the intent to commit a crime therein. *See Mathis*, 136 S. Ct. at 2249. The Immigration Judge found that, with respect to the 2002 conviction, the respondent pleaded no contest to "Burg I

---

[3] Citing *United States v. Cisneros*, 826 F.3d 1190 (9th Cir. 2016), the respondent argues that section 164.225 is indivisible. In *Cisneros*, the Ninth Circuit held that section 164.225 punishes conduct outside the generic definition of a "burglary" under Federal law because "the statute does not limit burglary to 'building[s] or structure[s],' but also includes non-structures (such as booths, vehicles, boats, and aircraft)." *Id.* at 1194 (alteration in original) (quoting *United States v. Mayer*, 560 F.3d 948, 959 (9th Cir. 2009)). The Ninth Circuit additionally held that section 164.225 is indivisible with respect to the type of "building" involved in a violation of section 164.225. *Id.* at 1196. However, the holding in *Cisneros* is inapposite. While the definition of a "building" under Oregon law is relevant to the categorical comparison of the elements of section 164.225 to the generic definition of burglary under Federal law, as we explain below, it is the requirement that the building be a "dwelling"—that is, "a building which regularly or intermittently is occupied" under section 164.205(2)—that brings violations of the first prong of section 164.225 within the generic definition of a crime involving moral turpitude. The respondent does not argue that a burglary of a regularly or intermittently occupied dwelling that is not a structure (such as a booth, vehicle, boat, or aircraft) is less turpitudinous than a burglary of an occupied dwelling that is a structure.

occupied." Additionally, the judgment and plea agreement for the respondent's 1999 conviction show that he pleaded to "Burglary I" as charged in Count 2 of the charging document, which alleged that the offense occurred "in an occupied dwelling." We therefore discern no error in the Immigration Judge's conclusion that, according to the respondent's record of conviction, he was convicted under the prong of section 164.225 that requires entering or remaining unlawfully in a "dwelling" with the intent to commit a crime.[4] The critical question then becomes whether burglary of a regularly or intermittently occupied dwelling under Oregon law is a crime involving moral turpitude. For the following reasons, we conclude that it is.

We first addressed in a precedent decision whether burglary is a crime involving moral turpitude in *Matter of M-*, 2 I&N Dec. 721 (BIA, A.G. 1946). In that decision, which the Attorney General affirmed, we considered a provision of New York Penal Law that provided that whoever "[w]ith intent to commit a crime therein, breaks and enters a building, or a room, or any part of a building[] or . . . [b]eing in any building, commits a crime therein and breaks out of the same, is guilty of burglary in the third degree." *Id.* at 722.

We indicated that we had "always maintained that these offenses may or may not involve moral turpitude, the determinative factor being whether the crime intended to be committed at the time of entry or prior to the breaking out involves moral turpitude." *Id.* at 723 (citing nonprecedential orders issued between 1943 and 1945). We reasoned that merely unlawfully entering premises by, "[f]or example, pushing ajar the unlocked door of an unused structure and putting one's foot across the threshold," would not itself constitute "base, vile, or depraved" conduct. *Id.* And we noted that although larceny was probably present in most violations of the New York statute, "larceny is not a *necessary* element in third degree burglary in New York." *Id.* In fact, the statute reached breaking and entering to commit any one of almost countless offenses under New York law, including misdemeanor offenses such as "a group of boys opening the unlocked door of an abandoned barn with the intention of playing cards in violation of one of the many New York wagering laws," an offense we concluded did not involve moral turpitude. *Id.* We therefore held that it is the "particular crime" that accompanies the unlawful entry, rather than the unlawful entry itself, that determines the turpitudinous nature of a burglary offense. *Id.*

In numerous unpublished decisions issued subsequent to *Matter of M-*, we have applied our holding that burglary is a crime involving moral

---

[4] Although section 164.225 is divisible with respect to whether a burglary offense involved entering or unlawfully remaining in a dwelling, it is indivisible with respect to whether the dwelling was "occupied" within the meaning of section 164.205(2) at the time of the offense, as alleged in both the 1999 and 2002 records of conviction.

turpitude only if the crime accompanying the unlawful entry is itself turpitudinous. However, we have emphasized that *Matter of M-* did not involve burglary of a dwelling. *See Matter of Louissaint*, 24 I&N Dec. 754, 756 (BIA 2009) ("We therefore find that our holding in *Matter of M-* . . . is distinguishable because the offense at issue here . . . involves the burglary *of an occupied dwelling*." (emphasis added)); *cf. Hernandez-Cruz v. Holder*, 651 F.3d 1094, 1106–10 (9th Cir. 2011) (concluding that the offense of entering a commercial building with the intent to commit any felony was not a categorical crime involving moral turpitude because it did not involve a "dwelling" or require the entry to be unlawful).

In *Louissaint*, we held that burglary of an occupied dwelling in violation of section 810.02(3)(a) of the Florida Statutes is a categorical crime involving moral turpitude because the "conscious and overt act of unlawfully entering or remaining in an occupied dwelling with the intent to commit a crime is inherently 'reprehensible conduct' committed 'with some form of scienter.'" *Matter of Louissaint*, 24 I&N Dec. at 758 (citation omitted). We reasoned that "[b]y breaking into a dwelling of another for an illicit purpose, the burglar tears away the resident's justifiable expectation of privacy and personal security and invites a violent defensive response from the resident." *Id.* at 758–59. In a recent decision holding that third degree burglary of a dwelling under Maryland law is categorically a crime involving moral turpitude, the United States Court of Appeals for the Fourth Circuit similarly distinguished our decision in *Matter of M-* and deferred to our holding in *Louissaint*. *Uribe v. Sessions*, 855 F.3d 622, 626−27 & n.5 (4th Cir. 2017).[5]

We recognize that the Ninth Circuit, in whose jurisdiction this case arises, has favorably cited our holding in *Matter of M-* for the proposition that "the act of entering is not itself 'base, vile or depraved,' and that it is the particular crime that accompanies the act of entry that determines whether [a burglary] offense is one involving moral turpitude." *Cuevas-Gaspar v. Gonzales*, 430 F.3d 1013, 1019 (9th Cir. 2005) (quoting *Matter of M-*, 2 I&N Dec. at 723), *abrogated on other grounds by Holder v. Martinez Gutierrez*, 566 U.S. 583 (2012). However, that case was decided before we issued *Louissaint*, which clarified that unlawfully entering or remaining in an occupied dwelling to commit *any* crime categorically falls within the generic definition of a crime involving moral turpitude. Thus, we do not view *Cuevas-Gaspar* as intending to preclude us from reconsidering and refining our holding in *Matter of M-* after a reasoned analysis. *See Marmolejo-Campos v. Holder*, 558 F.3d 903, 911 (9th Cir. 2009) (en banc) (stating that deference should be accorded where "the Board determines that certain conduct is morally

---

[5] At this time, we need not address whether burglary of a "dwelling" or "residence" is a categorical crime involving moral turpitude under each of the States' definitions of these terms.

turpitudinous in a precedential decision"); *see also Uribe*, 855 F.3d at 627 n.5.

We conclude that it is appropriate to extend our holding in *Matter of Louissaint* to the offense of first degree burglary of a dwelling under section 164.225 of the Oregon Revised Statutes. Burglary of a dwelling under Oregon law differs from the Florida crime we examined in *Louissaint* in that Oregon does not require the victim's presence at the time of the offense. *See Matter of Louissaint*, 24 I&N Dec. at 758 (recognizing that the Florida statute required "proof that the burglary took place in a dwelling occupied by another person at the time the offender entered or remained"). However, section 164.205(2) of the Oregon Revised Statutes does require, at a minimum, that the dwelling be "*regularly or intermittently . . .* occupied." (Emphasis added.); *see also State v. Eaton*, 602 P.2d 1159, 1160 (Or. Ct. App. 1979) (concluding that a structure is not "regularly or intermittently" occupied "[w]here an eight-week period of occupancy is followed by 44 weeks of vacancy, and where the burglary occurred months after the last occupant left").

This requirement raises the probability of a person's presence at the time of the offense and involves the same justifiable expectation of privacy and personal security as the Florida burglary offense we considered in *Louissaint*. *See California v. Ciraolo*, 476 U.S. 207, 213 (1986) (indicating that privacy expectations are most heightened in a person's home, both physically and psychologically). We therefore hold that burglary of a regularly or intermittently occupied dwelling under Oregon law is morally turpitudinous, regardless of whether a person was actually present at the time of the offense. Consequently, the Immigration Judge correctly ruled that the respondent has been convicted of a crime involving moral turpitude and is therefore removable under section 212(a)(2)(A)(i)(I) of the Act.

## B. Relief and Protection From Removal

Because the respondent has been convicted of an offense under section 212(a)(2), he is ineligible for cancellation of removal under section 240A(b)(1)(C) of the Act, 8 U.S.C. § 1229b(b)(1)(C) (2012). The respondent also applied for asylum, withholding of removal, and protection under the Convention Against Torture. Although he conceded that he did not experience past persecution in Mexico, he testified that he fears returning to that country because he is afraid he will be targeted for kidnapping and other harm as a result of the general violence there and because he will be singled out as someone who has spent many years in the United States.

The Immigration Judge determined that the respondent is barred from seeking asylum because his late filing was not excused. *See* sections

208(a)(2)(B), (D) of the Act, 8 U.S.C. §§ 1158(a)(2)(B), (D) (2012); 8 C.F.R. § 1208.4(a)(4), (5) (2017). However, we need not address the timeliness of the application because we agree with the Immigration Judge's alternative determinations that the respondent has not demonstrated past persecution or shown that membership in a particular social group, or any other protected ground, would be at least one central reason (or even a reason) for the harm he fears. *See Barajas-Romero v. Lynch*, 846 F.3d 351, 358–60 (9th Cir. 2017) (holding that although an applicant for asylum must show that a protected ground was "one central reason" for the claimed persecution, the Act only requires applicants for withholding of removal to demonstrate that a protected ground was "a reason" for the harm). Because the respondent does not allege that he experienced past persecution in Mexico, he is not entitled to a presumption that he has a well-founded fear of future persecution. 8 C.F.R. § 1208.13(b)(1) (2017).

We also agree with the Immigration Judge that the respondent has not established the requisite likelihood of future persecution on account of membership in a particular social group. We recently clarified the elements required to establish a cognizable particular social group under the Act. *See Matter of M-E-V-G-*, 26 I&N Dec. 227, 237–43 (BIA 2014); *Matter of W-G-R-*, 26 I&N Dec. 208, 212–18 (BIA 2014), *vacated in part and remanded on other grounds*, *Reyes v. Lynch*, 842 F.3d 1125 (9th Cir. 2016). An applicant for asylum or withholding of removal based on membership in a particular social group must establish that the group (1) is composed of members who share a common immutable characteristic, (2) is defined with particularity, and (3) is socially distinct within the society in question. *Matter of M-E-V-G-*, 26 I&N Dec. at 237; *Matter of W-G-R-*, 26 I&N Dec. at 212–18; *see also Reyes*, 842 F.3d at 1135 (deferring to our articulation of the "particularity" and "social distinction" requirements). In addition to establishing the existence of a cognizable particular social group, an applicant for asylum or withholding of removal must also demonstrate a nexus between the alleged persecution and membership in the specified social group. *See Matter of L-E-A-*, 27 I&N Dec. 40, 43−44 (BIA 2017).

Although the respondent did not clearly articulate a particular social group, he asserted that he would be targeted by criminals because he would be recognized as someone who has lived in the United States for a long period of time based on his clothing and accent. However, this proposed group lacks particularity, because it is amorphous and lacks definable boundaries. As described, the proposed group could include persons of any age, sex, or background. *See Ramirez-Munoz v. Lynch*, 816 F.3d 1226, 1228–29 (9th Cir. 2016) (finding that no cognizable particular social group was established by Mexicans claiming they would be perceived as wealthy Americans because they are light-skinned, fit, and have American mannerisms or accents);

*Delgado-Ortiz v. Holder*, 600 F.3d 1148, 1151–52 (9th Cir. 2010) (finding that a group comprised of "returning Mexicans from the United States" was too broad to constitute a cognizable social group); *Matter of W-G-R-*, 26 I&N Dec. at 223 ("Deportees are too broad and diverse a group to satisfy the particularity requirement for a particular social group under the Act."). Accordingly, the respondent has not demonstrated membership in a cognizable particular social group and therefore has not shown his eligibility for asylum or withholding of removal. *See Zetino v. Holder*, 622 F.3d 1007, 1016 (9th Cir. 2010) ("An alien's desire to be free from harassment by criminals motivated by theft or random violence by gang members bears no nexus to a protected ground.").

We also affirm the Immigration Judge's determination that the respondent has not met his burden of proof for protection under the Convention Against Torture. Although we recognize the generalized evidence of crime, violence, and impunity among public officials in Mexico, there is no clear error in the Immigration Judge's finding that the respondent did not establish that it is more likely than not that he, in particular, will be tortured by or at the instigation of, or with the consent or acquiescence of (to include the concept of willful blindness), a public official or other person acting in an official capacity in Mexico. 8 C.F.R. §§ 1208.16(c)(2), 1208.18(a)(1) (2017); *see also Delgado-Ortiz*, 600 F.3d at 1152.

## III. CONCLUSION

The respondent has been convicted of a crime involving moral turpitude and is therefore removable under section 212(a)(2)(A)(i)(I) of the Act and ineligible for cancellation of removal under section 240A(b)(1)(C). He has also not established that he is eligible for asylum, withholding of removal, or protection under the Convention Against Torture. Accordingly, his appeal will be dismissed. However, because the respondent submitted timely proof that he paid the voluntary departure bond, the period of voluntary departure granted by the Immigration Judge will be reinstated.

**ORDER:** The appeal is dismissed.

**FURTHER ORDER:** Pursuant to the Immigration Judge's order and conditioned upon compliance with conditions set forth by the Immigration Judge and the statute, the respondent is permitted to voluntarily depart the United States, without expense to the Government, within 60 days from the date of this order or any extension beyond that time as may be granted by the DHS. *See* section 240B(b) of the Act, 8 U.S.C. § 1229c(b) (2012); *see also* 8 C.F.R. § 1240.26(c), (f) (2017). In the event the respondent fails to voluntarily depart the United States, the respondent shall be removed as provided in the Immigration Judge's order.

**NOTICE:** If the respondent fails to voluntarily depart the United States within the time period specified, or any extensions granted by the DHS, the respondent shall be subject to a civil penalty as provided by the regulations and the statute and shall be ineligible for a period of 10 years for any further relief under section 240B and sections 240A, 245, 248, and 249 of the Act, 8 U.S.C. §§ 1229b, 1255, 1258, and 1259 (2012). *See* section 240B(d) of the Act.

**WARNING:** If the respondent files a motion to reopen or reconsider prior to the expiration of the voluntary departure period set forth above, the grant of voluntary departure is automatically terminated; the period allowed for voluntary departure is not stayed, tolled, or extended. If the grant of voluntary departure is automatically terminated upon the filing of a motion, the penalties for failure to depart under section 240B(d) of the Act shall not apply. *See* 8 C.F.R. § 1240.26(e)(1).

**WARNING:** If, prior to departing the United States, the respondent files any judicial challenge to this administratively final order, such as a petition for review pursuant to section 242 of the Act, 8 U.S.C. § 1252 (2012), the grant of voluntary departure is automatically terminated, and the alternate order of removal shall immediately take effect. However, if the respondent files a petition for review and then departs the United States within 30 days of such filing, the respondent will not be deemed to have departed under an order of removal if he provides to the DHS such evidence of his departure that the Immigration and Customs Enforcement Field Office Director of the DHS may require and provides evidence DHS deems sufficient that he has remained outside of the United States. The penalties for failure to depart under section 240B(d) of the Act shall not apply to an alien who files a petition for review, notwithstanding any period of time that he remains in the United States while the petition for review is pending. *See* 8 C.F.R. § 1240.26(i).