**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

JOSE GUILLERMO DIAZ-FLORES,
*Petitioner*,

v.

MERRICK B. GARLAND, Attorney
General,
*Respondent.*

No. 17-72563

Agency No.
A201-240-843

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted December 9, 2020
Seattle, Washington

Filed April 6, 2021

Before: M. Margaret McKeown and Patrick J. Bumatay,
Circuit Judges, and Michael W. Mosman,[*] District Judge.

Opinion by Judge Bumatay

---

   [*] The Honorable Michael W. Mosman, United States District Judge
for the District of Oregon, sitting by designation.

## SUMMARY[**]

### Immigration

Denying Jose Diaz-Flores's petition for review of a decision of the Board of Immigration Appeals, the panel held that the BIA permissibly concluded that first-degree burglary of a dwelling under Oregon Revised Statutes § 164.225 is a crime involving moral turpitude ("CIMT").

Applying the categorical approach, the panel first concluded that the Oregon statute is overbroad as to intent and as to the type of structure involved. Specifically, the statute encompasses unlawful entry into any building, including a commercial space, with any criminal intent, but this court has held that burglary statutes that allow intent to commit any crime are not categorically CIMTs, and that burglary of a commercial, rather than residential, building also is not categorically a CIMT.

Next, the panel concluded that the Oregon statute is divisible. Looking to its plain text, the panel observed that the statute appears divisible between burglary of a dwelling on the one hand, and burglary of a non-dwelling on the other. The panel further explained that this interpretation is confirmed by state court cases, as well as Oregon's jury instructions.

Turning to the modified categorical approach, the panel consulted Diaz-Flores's indictment and judgment and

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

concluded that his conviction for first-degree burglary was of a dwelling, and further concluded that this precise offense is a CIMT. The panel agreed with the BIA's conclusion, in the published decision in this case, that burglary constitutes a CIMT when it requires proof that the defendant burglarized a regularly or intermittently occupied dwelling. The panel explained that such a crime comports with this court's understanding of a CIMT as an offense that is vile, base or depraved and violates accepted moral standards, explaining that burglary of a dwelling of this kind necessarily involves an intrusion into the justifiable expectation of privacy and personal security that people have in places where they retreat at night for lodging. Accordingly, the panel concluded that Diaz-Flores's conviction was a CIMT that made him ineligible for cancellation of removal.

Finally, the panel concluded that Supreme Court and circuit precedent foreclosed Diaz-Flores's argument that the phrase "crime involving moral turpitude" is unconstitutionally vague.

In a concurrently filed memorandum disposition, the panel denied Diaz-Flores's petition for review with respect to his claims for asylum, withholding of removal, and protection under the Convention Against Torture.

## COUNSEL

N. David Shamloo (argued), Portland, Oregon, for Petitioner.

Rebekah Nahas (argued), Trial Attorney; Briena L. Strippoli, Senior Litigation Counsel; Office of Immigration Litigation,

Civil Division, United States Department of Justice, Washington, D.C.; for Respondent.

## OPINION

BUMATAY, Circuit Judge:

The question before the court is whether a conviction for first-degree burglary of a dwelling under Oregon Revised Statutes § 164.225 is a crime involving moral turpitude for immigration purposes. The petition before us argues that it is not and that the phrase "crime involving moral turpitude" is unconstitutionally vague anyway. We hold that the Board of Immigration Appeals ("BIA") permissibly concluded that ORS § 164.225 is a crime involving moral turpitude ("CIMT") and that precedent forecloses the constitutional vagueness argument. We thus deny the petition.

## I.

At the age of 12, Jose Diaz-Flores, a native of Mexico, entered the United States without inspection. Twenty years later, Diaz-Flores found himself in the Multnomah County Jail on domestic-violence charges. An immigration officer who was conducting routine operations at that jail discovered that Diaz-Flores had entered unlawfully. Diaz-Flores was then taken into Immigration and Customs Enforcement custody. The Department of Homeland Security later learned that Diaz-Flores had been previously convicted of first-degree burglary in Oregon twice in the span of three years. *See* ORS § 164.225.

DHS then initiated removal proceedings, charging Diaz-Flores as removable as an alien present without admission or parole, 8 U.S.C. § 1182(a)(6)(A)(i), and as an alien who has

been convicted of a crime involving moral turpitude, 8 U.S.C. § 1182(a)(2)(A)(i)(I). Diaz-Flores conceded the first charge of removability but denied the second. He also sought cancellation of removal, asylum, withholding of removal, and protection under the Convention Against Torture ("CAT").

The immigration judge sustained the charge of removability for conviction of a crime involving moral turpitude on the grounds that ORS § 164.225 constituted such a crime. The IJ then held that the conviction rendered him statutorily ineligible for cancellation of removal. *See* 8 U.S.C. §§ 1229b(b)(1)(C), 1182(a)(2)(A)(i)(I). The IJ also denied his request for asylum, withholding of removal, and CAT protection.

In a published decision, the BIA affirmed, concluding that first-degree burglary of a dwelling under ORS § 164.225 is a crime involving moral turpitude. The BIA also affirmed the denial of all relief from removal.

Diaz-Flores petitioned for this court's review. We have jurisdiction to decide the question of law that Diaz-Flores raises: whether his conviction of first-degree burglary under Oregon law qualifies as a crime involving moral turpitude. *See* 8 U.S.C. § 1252(a)(2)(D); *Robles-Urrea v. Holder*, 678 F.3d 702, 707 (9th Cir. 2012). We review that question de novo. *Jauregui-Cardenas v. Barr*, 946 F.3d 1116, 1118 (9th Cir. 2020).[1]

---

[1] In a concurrently filed memorandum disposition, we address Diaz-Flores's asylum, withholding of removal, and CAT claims.

## II.

To determine whether a particular conviction is of a "crime involving moral turpitude," we rely on the now-familiar categorical and modified-categorical approaches described in *Taylor v. United States*, 495 U.S. 575, 600–02 (1990), and *Descamps v. United States*, 570 U.S. 254, 257 (2013). *Syed v. Barr*, 969 F.3d 1012, 1017 (9th Cir. 2020). These approaches are "best understood as a task of statutory matching—we ask whether the statutory elements of the crime of conviction match the elements of the generic offense which serves as the basis for removal." *Id*.

We note that referring to a "generic" definition of a "crime involving moral turpitude" is somewhat of a misnomer since there is no such crime in the United States Code. *See Ceron v. Holder*, 747 F.3d 773, 786 (9th Cir. 2014) (Bea, J., dissenting). Federal immigration law offers no assistance either; the Immigration and Nationality Act neither defines moral turpitude nor provides any rules for determining whether a crime involves moral turpitude. *See* 8 U.S.C. § 1182(a)(2)(A)(i)(I). Through our precedents, we have settled on an understanding that a crime involving moral turpitude is one that is "vile, base, or depraved" and "violates accepted moral standards." *Ramirez-Contreras v. Sessions*, 858 F.3d 1298, 1304 (9th Cir. 2017).[2]    Yet,

---

[2] We question how the definition of crime involving moral turpitude became so unwieldy. According to the Supreme Court, the term "moral turpitude" has "deep roots in the law," but, at least as of 1951, courts had invariably interpreted it to mean crimes with "fraud" as an "ingredient." *Jordan v. De George*, 341 U.S. 223, 227 (1951). The expansion of its definition beyond such crimes has led to a "chorus of voices calling for renewed consideration as to whether the phrase 'crime involving moral turpitude' is unconstitutionally vague." *Barbosa v. Barr*, 926 F.3d 1053,

because even that definition offers a poor delineation of criminal elements, we generally compare the state offense to crimes that have previously been found to involve moral turpitude. *Mendoza v. Holder*, 623 F.3d 1299, 1302 (9th Cir. 2010). With this legal framework in mind, we turn to whether ORS § 164.225 is a crime involving moral turpitude.

## A.

At the first step, we must decide whether first-degree burglary is a categorical match to a CIMT or if it is overbroad. The Oregon law provides:

> A person commits the crime of burglary in the first degree if the person violates ORS 164.215 [second-degree burglary] and the building is a dwelling, *or* if in effecting entry or while in a building or in immediate flight therefrom the person:
>
> (a) Is armed with a burglary tool or theft device as defined in ORS 164.235 or a deadly weapon;
>
> (b) Causes or attempts to cause physical injury to any person; or
>
> (c) Uses or threatens to use a dangerous weapon.

---

1060 (9th Cir. 2019) (Berzon, J., concurring). As discussed below, we are foreclosed from so ruling.

ORS § 164.225(1) (emphasis added). In turn, Oregon's second-degree burglary statute makes it a crime to "enter[] or remain[] unlawfully in a building with intent to commit a crime therein." *Id.* § 164.215(1). A "dwelling" is defined as "a building which regularly or intermittently is occupied by a person lodging therein at night, whether or not a person is actually present." *Id*. § 164.205(2). A "building" is expansively defined, bearing its "ordinary meaning," yet also includes "any booth, vehicle, boat, aircraft or other structure adapted for overnight accommodation of persons or for carrying on business therein." *Id.* § 164.205(1).

We have previously held that burglary does not categorically constitute a crime involving moral turpitude. In *Cuevas-Gaspar v. Gonzales*, we considered the intent necessary for a burglary to be deemed morally turpitudinous. 430 F.3d 1013, 1020 (9th Cir. 2005), *abrogated on other grounds by Holder v. Martinez Gutierrez*, 566 U.S. 583 (2012). First, we've considered the intent necessary for a burglary to be deemed morally turpitudinous. We noted that the BIA at the time only considered a burglary a CIMT if the underlying crime that the burglar intended to commit was itself a crime of moral turpitude. *Id*. (relying on *Matter of M-*, 2 I. & N. Dec. 721, 723 (BIA 1946)). We then ruled that burglary statutes that allow intent for *any* crime are not categorically crimes involving moral turpitude. *Id*.**[3]** We

---

**[3]** We note that *Cuevas-Gaspar* does not control our decision here. In that case, we focused only on whether the *intended* crime in the burglary was itself an immoral crime. 430 F.3d at 1020. We had no occasion to address the question here: whether burglary *of a dwelling*, as defined by Oregon law, can be a crime involving moral turpitude even when the predicate crime is not. Nothing in *Cuevas-Gaspar* forecloses that the burglary of a regularly or intermittently occupied dwelling is categorically a crime involving moral turpitude. *See Plaut v. Spendthrift*,

have also held that burglary of a commercial, rather than a residential, building isn't categorically a crime involving moral turpitude. *See Hernandez-Cruz v. Holder*, 651 F.3d 1094, 1107 (9th Cir. 2011) (holding that burglary not involving a residence is not a CIMT). As discussed further below, unlawfully entering someone's residential dwelling implicates safety and privacy concerns unlike a commercial or non-residential space.

Based on these precedents, Oregon's first-degree burglary statute is overbroad as to intent and as to the type of structure involved. ORS § 164.215(1). The law proscribes any unlawful entry into any "building," including a commercial space, with any criminal intent. *Id*. For example, a vandal may use an oxygen lance to break into an aircraft to graffiti the inside of the airplane. That person could be convicted of first-degree burglary. *See* ORS §§ 164.225 (first-degree burglary), 164.205 ("building" includes aircraft), 164.235 (categorizing an "oxygen lance" as a burglary tool). But our hypothetical criminal would not have committed the type of burglaries condemned as a crime involving moral turpitude: the location of the burglary was not a dwelling and the predicate crime of vandalism is not itself one involving moral turpitude.[4] This means that Oregon's statute is not a categorical match. *See Taylor*, 495 U.S. at 591 (recognizing that California's burglary

---

514 U.S. 211, 232 n.6 (1995) ("Of course the unexplained silences of our decisions lack precedential weight.").

[4] That said, vandalism *might* be considered a crime of moral turpitude if committed to benefit a criminal street gang. *See Matter of E.E. Hernandez*, 26 I. & N. Dec. 397, 397 (BIA 2014). *But see Hernandez-Gonzalez v. Holder*, 778 F.3d 793, 806–07 (9th Cir. 2015) (refusing to defer to *Matter of Hernandez* and calling its reasoning into doubt).

statute would be overbroad because its elements could hypothetically encompass mere shoplifting).

## B.

Since Oregon's first-degree burglary statute is overbroad, we must therefore decide whether it is a divisible crime. *See Mathis v. United States*, 136 S. Ct. 2243, 2249 (2016) (Sometimes "[a] single statute may list elements in the alternative, and thereby define multiple crimes."). We hold that it is.

By its plain text, the statute appears divisible between burglary of a dwelling on the one hand, and burglary of a non-dwelling on the other. A defendant can be convicted of ORS § 164.225 with proof that he unlawfully entered a building with intent to a commit a crime and either: (a) the building was a "dwelling," *or* (b) one of other enumerated aggravating factors is present. Thus, the statute facially houses two different crimes under one roof.

Still, a statute's plain text can be deceiving when it comes to divisibility. *See Ramirez v. Lynch*, 810 F.3d 1127, 1135 (9th Cir. 2016) ("[T]he mere use of the disjunctive term 'or' does not automatically make a statute divisible.") (simplified). But here our plain-text interpretation is confirmed by state court cases treating burglary of a dwelling as a distinct crime, for which "dwelling" is an element that must be proven beyond a reasonable doubt. *See, e.g.*, *State v. Taylor*, 271 Or. App. 292, 296–97 (2015). And any lingering questions about the statute's divisibility are dispelled by Oregon's jury instructions. *See Almanza-Arenas v. Lynch*, 815 F.3d 469, 482 (9th Cir. 2016) (en banc) (holding that we "need not go beyond California's pattern criminal jury instructions" to resolve divisibility). The instructions not only separately identify these alternative

elements, there are also separate instructions altogether for the two different crimes. *Compare* Oregon Uniform Criminal Jury Instruction § 1901 (2013) (first-degree burglary of a dwelling), *with id.* § 1902 (first-degree burglary of a non-dwelling). For these reasons, we are satisfied that Oregon's first-degree burglary statute is divisible between two distinct crimes: (1) first-degree burglary of a dwelling; and (2) first-degree burglary of a non-dwelling involving an aggravating factor.

Our conclusion does not waver in the face of *United States v. Cisneros*, 826 F.3d 1190 (9th Cir. 2016). There, we analyzed whether an ORS § 164.225 conviction was a "violent felony," which requires matching its elements to the generic definition of "burglary." *Id.* at 1193. We held that first-degree burglary was indivisible because a jury need not agree on the "*type* of building": so long as it was a "dwelling," the jury could convict. *Id.* at 1194–96 (emphasis added).[5] In other words, the statute was not divisible as to type of building, which was essential for matching the federal definition of "burglary." Here, the question is whether Diaz-Flores's conviction was a "crime involving moral turpitude." *Cisneros* says nothing about whether the statute is divisible between dwelling and non-dwelling burglaries for that inquiry.

Because Oregon's burglary statute is divisible between dwelling and non-dwelling burglaries, we may turn to the

---

[5] For example, a person could burglarize a "boat" and be convicted of a first-degree burglary of a "dwelling" so long as the boat was "regularly or intermittently" "occupied by a person lodging therein at a night." ORS §§ 164.225, 164.205(1) and (2). This makes Oregon's first-degree burglary statute overbroad compared to the generic federal definition of burglary, which excludes boats and the like. *Cisneros*, 826 F.3d at 1194–95.

modified categorical approach and look to the record to determine Diaz-Flores's precise conviction under ORS § 164.225. *See Descamps*, 570 U.S. at 257 ("[T]he modified categorical approach permits sentencing courts to consult a limited class of documents, such as indictments and jury instructions, to determine which alternative [element in a divisible statute] formed the basis of the defendant's prior conviction."). Consulting the indictment and judgment, Diaz-Flores's first conviction for first-degree burglary was of a dwelling.

## C.

Assured of Diaz-Flores's precise offense of conviction, we can now consider whether it involves moral turpitude. In this case, the BIA issued a published opinion concluding that burglary constitutes a crime involving moral turpitude when one of the elements requires proof that the defendant burglarized a "regularly or intermittently occupied dwelling." *Matter of J-G-D-F-*, 27 I. & N. Dec. 82, 86 (BIA 2017). We agree with the BIA that such a crime is "vile, base, or depraved and violates accepted moral standards." *Syed*, 969 F.3d at 1017 (simplified).

Because the statute requires the burglarized dwellings be regularly or intermittently occupied, a conviction will necessarily involve an intrusion onto the "justifiable expectation of privacy and personal security" that people have in the places where they retreat at night for lodging. *Matter of J-G-D-F-*, 27 I. & N. Dec. at 88. Appreciation for the sanctity of the home is both basic and widespread. As the Supreme Court has recognized, a victim's presence renders burglary particularly worthy of moral condemnation. *See James v. United States*, 550 U.S. 192, 203 (2007) ("The main risk of burglary arises not from the simple physical act of wrongfully entering onto another's property, but rather

from the possibility of a face-to-face confrontation between the burglar and a third party[.]"), *overruled on other grounds by Johnson v. United States*, 576 U.S. 591 (2015). Oregon state courts have also noted that "[t]he reason that invading a 'dwelling' is made a more serious crime is to '[protect] against invasion of premises likely to terrorize occupants.'" *State v. Davis*, 281 Or. App. 855, 865 (2016) (quoting *State v. Ramey*, 89 Or. App. 535, 538 (1988)).

Even if the burglar happens to break in when the victim is not home, the sanctity of the home has still been violated. "[A]n individual's expectation that her dwelling will remain private, secure, and free from intruders intending to commit a crime is violated regardless whether the dwelling is occupied at the time of the burglary." *Uribe v. Sessions*, 855 F.3d 622, 626–27 (4th Cir. 2017) (classifying an analogous Maryland burglary statute as a CIMT); *see also California v. Ciraolo*, 476 U.S. 207, 213 (1986) (recognizing concern for privacy is "most heightened" in a person's home, "both physically and psychologically").

And contrary to Diaz-Flores's argument, construing ORS § 164.225 as a CIMT is a natural extension of prior BIA precedents regarding crimes of moral turpitude. In *Matter of Louissaint*, 24 I. & N. Dec. 754, 758–59 (BIA 2009), the BIA determined that a Florida burglary statute, which required proof that the dwelling was occupied at the time of the invasion, was a crime involving moral turpitude. The BIA reasoned that, by engaging in this criminal conduct, "the burglar tears away the resident's justifiable expectation of privacy and personal security and invites a violent defensive response from the resident." *Id.*

Although the victim need not be present at the time of the invasion, the Oregon statute does require that the dwelling be one that "regularly or intermittently is occupied

by a person lodging therein at night." *See* ORS §§ 164.205(2), 164.225. This element increases the chances that the victim will be present at the time of the burglary. It was therefore a logical extension of *Matter of Louissaint*—which focused on a victim's presence as the key factor—to treat burglaries of a regularly or intermittently occupied dwelling as a CIMT. *See also Uribe*, 855 F.3d at 626–27 & n.5 (extending *Matter of Louissaint*'s reasoning to analogous Maryland burglary law).

We also find no inconsistency with *Matter of M-*, 2 I. & N. Dec. 721. There, the BIA considered New York's third-degree burglary statute, which proscribed breaking and entering a building with the intent to commit any crime. *Id.* at 722. The BIA concluded that this burglary statute was only a crime involving moral turpitude if the *underlying* crime the burglar intended to commit was one itself. *Id.* at 723. But the BIA's reasoning turned on the statutory definitions, which cast a wide net over a range of buildings, including ones where no person would likely be present. For example, the BIA worried that the statute would criminalize "a group of boys opening the unlocked door of an abandoned barn with the intention of playing cards in violation of one of the many New York wagering laws." *Id.* Simply put, the BIA had no occasion in *Matter of M-* to address when burglary of a *dwelling* is a crime involving moral turpitude.

For these reasons, we agree that Oregon's first-degree burglary statute, when involving a dwelling, is a "crime involving moral turpitude" under § 1182(a)(2)(A)(i)(I).[6]

---

[6] In any case, our precedent commands that we grant *Chevron* deference to a published decision of the BIA concerning a crime involving moral turpitude. *Safaryan v. Barr*, 975 F.3d 976, 982 (9th Cir.

Diaz-Flores was statutorily ineligible for cancellation of removal. *See* 8 U.S.C. §§ 1229b(b)(1)(C), 1182(a)(2)(A)(i)(I).

## III.

Diaz-Flores also argues that the phrase "crime involving moral turpitude" is unconstitutionally vague. Even if we agreed with Diaz-Flores on this point, precedent binds us from holding so. In *Jordan v. De George*, 341 U.S. 223, 230 (1951), the Supreme Court rejected a vagueness challenge to the Immigration and Nationality Act's use of that phrase. *See also Tseung Chu v. Cornell*, 247 F.2d 929, 936, 938 (9th Cir. 1957) (rejecting vagueness challenge to the phrase where intent to defraud was an element of crime). And although recent Supreme Court decisions have breathed new life into the vagueness doctrine, *see, e.g.*, *Sessions v. Dimaya*, 138 S. Ct. 1204 (2018), we have already held that the Supreme Court has not overruled *Jordan. See, e.g.*, *Martinez-de Ryan v. Whitaker*, 909 F.3d 247, 252 (9th Cir. 2018).

Diaz-Flores also argues that *Jordan* can be limited to its facts—namely, when the crime involves fraud as an ingredient. *See Jordan*, 341 U.S. at 232 ("Whatever else the phrase 'crime involving moral turpitude' may mean in peripheral cases, the decided cases make it plain that crimes in which fraud was an ingredient have always been regarded as involving moral turpitude."). But our precedent forecloses this argument as well. *See Olivas-Motta v. Whitaker*, 910 F.3d 1271, 1281 (9th Cir. 2018) (rejecting vagueness challenge to crime involving moral turpitude

---

2020). For the reasons stated above, the BIA certainly was not unreasonable in its determination here.

determination for reckless endangerment conviction); *Islas-Veloz v. Whitaker*, 914 F.3d 1249, 1250–51 (9th Cir. 2019) (same for "communicating with a minor for immoral purposes"); *Ortega-Lopez v. Barr*, 978 F.3d 680, 688 n.10 (9th Cir. 2020) (same for animal fighting).

## IV.

For the foregoing reasons, we **DENY** the petition for review.