**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 21-1291
_____

NELSON EDGARDO CRUZ-IRAHETA,
Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES

_____

On Appeal from the Board of Immigration Appeals
Immigration Judge: Lisa de Cardona
(Agency No. A206-769-158)
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
on December 13, 2022

Before: RESTREPO, MCKEE, SMITH, *Circuit Judges*

(Filed: June 1, 2023)
_____

**OPINION**[*]
_____

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

RESTREPO, *Circuit Judge*.

## I.    Introduction

Petitioner, Nelson Edgardo Cruz-Iraheta, appeals the Immigration Judge's ("IJ") and Board of Immigration Appeals' ("BIA") denial of asylum, withholding of removal, and Convention Against Torture ("CAT") relief.  At the time of the events, Petitioner was a student in El Salvador and had to commute by bus across rival gang territory.  Petitioner was beaten on two occasions by individuals he believes were members of the Barrio 18 gang.  Petitioner argues that the Agency erred in concluding that his proposed particular social group ("PSG"), "Salvadoran male students that oppose gang activity," was not legally cognizable and that he had not suffered past persecution.  For the foregoing reasons, we deny the petition for review.

## II.    Jurisdiction

The BIA had jurisdiction pursuant to 8 U.S.C. § 1103 and 8 C.F.R. § 1003.1(b).  This Court's appellate jurisdiction for judicial review of a final order of removal is premised on 8 U.S.C. § 1252(a).  *See Shehu v. U.S. Att'y Gen.*, 482 F.3d 652, 656 (3d Cir. 2007) (holding that "denial . . . of [an] applicant's petition for asylum, withholding of removal, and relief under the CAT constitutes 'a final order of removal' within the meaning of the statute, as the [applicant] is entitled to no further process before deportation").  Petitioner filed a timely petition for review.  8 U.S.C. § 1252(b)(1).

## III.    Summary of the Issues

The issues on appeal are whether the IJ and BIA erred in concluding that Petitioner (1) did not establish a legally cognizable PSG, and (2) that Petitioner did not demonstrate

2

he suffered past persecution or has a well-founded fear of future persecution based on his proposed PSG.

## IV.    Standard of Review

When the BIA adopts and affirms the IJ's decision, as it did here, the Court reviews both decisions. *See Sandie v. U.S. Att'y Gen.*, 562 F.3d 246, 250 (3d Cir. 2009). Whether a petitioner's proposed PSG is legally cognizable presents a "mixed question of law and fact, since the ultimate legal question of cognizability depends on underlying factual questions concerning the group and the society of which it is a part." *S.E.R.L. v. U.S. Att'y Gen.*, 894 F.3d 535, 543 (3d Cir. 2018). Thus, we must use *de novo* review to determine "the ultimate legal conclusion as to the existence of a particular social group[.]" *Id.* On the other hand, we review underlying factual findings applying the highly deferential "substantial evidence" standard, *id.* (citing *Lukwago v. Ashcroft*, 329 F.3d 157, 167 (3d Cir. 2003)), which means that "factual 'determinations will be upheld if they are supported by reasonable, substantial, and probative evidence in the record considered as a whole,'" *id.* (citing *Kang v. Att'y Gen.*, 611 F.3d 157, 164 (3d Cir. 2010)).

## V.    Analysis

To qualify for asylum, an applicant bears the burden of establishing that he or she is a "refugee" under I.N.A § 101(a)(42)(A); 8 U.S.C.A § 1101(a)(42)(A). The term refugee is defined, in pertinent part, as any person who is unable or unwilling to return to their country of nationality "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." *Id.* At issue in this case are two relevant terms: "particular social group" and

3

"persecution." We presume familiarity with the facts of the case and address each issue in turn.

### 1. Particular Social Group

As a threshold matter, asylum applicants must demonstrate that their proposed PSG is legally cognizable. *S.E.R.L.*, 894 F.3d at 543. To establish the existence of a PSG, petitioners must show "'that the [proposed] group . . . is (1) composed of members who share a common immutable characteristic, (2) defined with particularity, and (3) socially distinct within the society in question.'" *Id.* at 540 (quoting *Matter of M-E-V-G-*, 26 I. & N. Dec. 227, 237 (BIA 2014)).

This Circuit has yet to decide whether the proposed group here—"Salvadoran male students that oppose gang activity"—qualifies as a cognizable particular social group for the purposes of asylum. However, we have rejected similar proposed groups for the purposes of asylum. *Valdiviezo-Galdamez v. U.S. Att'y Gen.*, 663 F.3d 582, 589 (3d Cir. 2011) (rejecting the proposed PSG "Honduran youth who have been actively recruited by gangs but have refused to join because they oppose the gangs" as lacking particularity).

Moreover, the BIA has held that "unwilling gang recruits" do not qualify as a particular social group. *Matter of N-C-M-*, 25 I. & N. Dec. 535, 535 n.1 (BIA 2011); *see also Matter of S-E-G-*, 24 I. & N. Dec. 579, 588 (BIA 2008) (concluding that young Salvadorans who have resisted gang recruitment efforts do not constitute a cognizable PSG); *Matter of E-A-G-*, 24 I. & N. Dec. 591, 594–95 (BIA 2008) (rejecting classification of "persons resistant to gang membership" as a PSG). Nevertheless, we conduct our own analysis on the PSG issue.

### *i. Immutable Characteristics*

Petitioners applying for asylum must demonstrate that their proposed PSG refers to "an individual who is a member of a group of persons all of whom share a common, immutable characteristic . . . [*e.g.*,] an innate one such as sex, color, or kinship ties, or in some circumstances . . . a shared past experience such as former military leadership or land ownership." *Matter of Acosta*, 19 I. & N. Dec 211, 233 (BIA 1985) (rejecting claimed social group of Salvadoran taxi cooperative drivers because characteristics that defined taxi drivers were not immutable as the drivers could change jobs).

The characteristic "must be one that the members of the group either cannot change, or should not be required to change because it is fundamental to their individual identities or consciences." *Id.*; *see also Guzman Orellana v. U.S. Att'y Gen.*, 956 F.3d 171, 178–79 (3d Cir. 2020) (concluding that the PSG of witnesses who "publicly provide[d] out of court assistance to law enforcement" was immutable); *Lukwago*, 329 F.3d at 179 (concluding that the applicant's "past experience of abduction, torture, and escape with other former child soldiers . . . [and] [h]is status as a former child soldier is a characteristic he cannot change and one that is now, unfortunately, fundamental to his identity"); *Lwin v. I.N.S.*, 144 F.3d 505, 510–12 (7th Cir. 1998) (concluding that "parent[s] of a student democracy activist" qualified as a PSG because its members shared a common, immutable characteristic, but remanding on the issue of whether there was a sufficient nexus of persecution to that PSG).

In this case, Petitioner's proposed PSG, "Salvadoran male students that oppose gang activity," is not immutable. As the IJ noted, although Petitioner's status as a Salvadoran

and male are immutable characteristics "that cannot be changed by the group's members, or should not be required to change because it is fundamental to their individual identities or consciences," Appx. 41–42 (citing *Acosta*, 19 I. & N. Dec. at 233), his status as a student is subject to change and is therefore not immutable. In fact, Petitioner's status as a student has already changed since he has graduated from high school and is no longer a student.

### ii. *Particularity*

Under the particularity requirement, which is "definitional in nature," a proposed PSG must "be defined by characteristics that provide a clear benchmark for determining who falls within the group," *Matter of M-E-G-V-*, I. & N. Dec. at 239, 241, and in such a way that "the members of society generally agree on who is included in the group," *Matter of W-G-R-*, 26 I. & N. Dec. at 221. The proposed group may not be "amorphous, overbroad, diffuse, or subjective," but instead must be specific and have "definable boundaries." *Matter of M-E-G-V-*, I. & N. Dec. at 239 (citing *Ochoa v. Gonzales*, 406 F.3d 1166, 1170–71 (9th Cir. 2005)).

As the BIA has noted, "not every immutable characteristic is sufficiently precise to define a particular social group." *Matter of W-G-R-*, 26 I. & N. Dec. at 213; *see, e.g.*, *Escobar v. Gonzalez*, 417 F.3d 363, 368 (3d Cir. 2005) (refusing to recognize a PSG because the characteristics of "[p]overty, homelessness and youth are far too vague and all encompassing to . . . set the perimeters for a [PSG]," and noting that "[t]he lack of an outer limit counsels against a designation that would appear to be contrary to congressional intent"); *In re A-M-E & J-G-U-*, 24 I. & N. Dec. 69, 76 (BIA 2007) (rejecting "wealthy Guatemalans" as a PSG because the group was not sufficiently particular); *Orellana-*

6

*Monson v. Holder*, 685 F.3d 511, 521–22 (5th Cir. 2012) (concluding that the proposed group—"men who were recruited but refused to join Mara 18"—lacked particularity because it was "too amorphous since it encompasses a wide swath of society crossing many political orientations, lifestyles, and identifying factors").

Similarly, here, Petitioner has failed to demonstrate the boundaries of or a benchmark for determining who belongs in his proposed group. While Petitioner contends that students from his school wearing blue shirts is an identifying feature, these characteristics do not form part of his PSG. As the IJ noted, Salvadoran male students that oppose gang activity could include a very broad group of people of all ages. Thus, the proposed PSG is not sufficiently particular.

### iii.  *Social Distinction*

In *Matter of M-E-V-G-*, the BIA abandoned its "social visibility" standard and instead adopted the "socially distinct" standard. 26 I. & N. Dec. at 236. This reversal was meant to clarify that the inquiry of this portion of the test is to determine whether the proposed group is "perceived as a group by society," but it does not require literal "ocular visibility." *Id.* In this fact-based analysis, one must consider how "societal considerations influence whether the people of a given society would perceive a proposed group as sufficiently separate or distinct to meet the 'social distinction' test." *Id.* at 241.

Importantly, the social distinction prong is determined by the perception of the society in question, not of the persecutor. *Id.* at 242; *Matter of S-E-G-*, 24 I. & N. Dec. at 582 (denying asylum for the proposed group of "Salvadoran youths who have resisted gang recruitment, or family members of such Salvadoran youth" because the applicant is "not in

7

a substantially different situation from anyone who has crossed the gang, or who is perceived to be a threat to the gang's interests"); *Matter of E-A-G-*, 24 I. & N. Dec. 591, 594 (BIA 2008) (concluding that PSG of "persons resistant to gang membership" was not sufficiently socially distinct to "allow others to identify its members as part of such a group").

The proposed PSG here is not socially distinct. As the IJ noted, male students are not distinguishable within society from other students because *anyone* who traverses the rival gang's territory may be subject to the gang's persecution. Furthermore, during the two incidents where Petitioner was beaten up, by individuals that he believed were members of the Barrio 18 gang, he did not engage in the conduct that he alleges makes his proposed PSG socially distinct, such as wearing a blue uniform or riding a public bus that crosses through a rival gang's territory. Therefore, the IJ and the BIA were both correct in concluding that Petitioner's proposed PSG is not socially distinct.

Accordingly, the proposed PSG is not legally cognizable.

### 2.     Persecution

Even if Petitioner had established a legally cognizable PSG, he has not demonstrated a sufficient nexus between his proposed PSG and alleged persecution. An applicant may apply for asylum based on past persecution or a well-founded fear of future persecution. *Lukwago*, 329 F.3d at 167; 8 C.F.R. § 1208.13(b)(1). If past persecution on account of a protected status is established, a presumption arises that the applicant has a well-founded fear of future persecution based on the protected characteristic. 8 C.F.R. § 1208.13(b)(2).

8

This Court has considered the meaning of persecution many times. Persecution can include "threats to life, confinement, torture, and economic restrictions so severe that they constitute a threat to life or freedom," but it "does not encompass all treatment that our society regards as unfair, unjust, or even unlawful or unconstitutional." *Fatin v. I.N.S.*, 12 F.3d 1233, 1240 (3d Cir. 1993). Also excluded from the meaning of persecution are "harsh conditions shared by many other persons," *id.* (citing *Acosta*, 19 I. & N. Dec. at 222), and "isolated incidents that do not result in serious injury," *Voci v. Gonzales*, 409 F.3d 607, 615 (3d Cir. 2005).

On the other hand, as Petitioner argues, a threat may be a form of persecution if "concrete and menacing" based on the surrounding circumstances. *Herrera-Reyes v. U.S. Att'y Gen.*, 952 F.3d 101, 107 (3d Cir. 2020) (concluding a threat was past persecution where armed men forced petitioner into a car, robbed him at gunpoint, and threatened to kill him if they ever saw him again). An asylum applicant may also demonstrate a fear of future persecution. To show a "well-founded fear of persecution," the applicant need not show that it is "more likely than not" that he will be persecuted in his country; "it is enough that persecution is a reasonable possibility." *I.N.S. v. Cardoza-Fonseca*, 480 U.S. 421, 438, 440 (1987).

Petitioner presents various incidents that involve abhorrent crimes purportedly committed by gangs. However, he was the victim in only two of these incidents. We do not discount Petitioner's experiences and his genuine fear of the gangs in his home country. We also do not deny the horrific crimes that the gangs have perpetrated against Petitioner's family and friends. However, Petitioner has failed to provide a sufficient nexus between

his alleged persecution and membership in his proposed PSG. From Petitioner's telling there is no evidence that the two incidents where he was beaten up occurred because he was a male student who opposed gangs. During the first incident he was playing soccer, before the start of the school year, with friends and during the second incident a police officer stopped him while walking outside.

Furthermore, while reprehensible, the beatings did not rise to the level of "severe" and "extreme" harm required for relief. *Compare Kibinda v. U.S. Att'y Gen.*, 477 F.3d 113, 119 (3d Cir. 2007) (concluding petitioner's detention by Angolan army did not rise to level of persecution even though the injury he suffered resulted in stitches and a scar); *with Voci*, 409 F.3d at 615 (concluding past persecution where petitioner "suffered multiple beatings, seven of which he characterized as severe, and at least one of which resulted in a broken knee and an extended hospital stay" and "police attempted to intimidate his family members and threatened their safety if [he] refused to abandon his political activities"). Petitioner has not claimed severe or lasting injury from the two beatings nor additional threats. Unfortunately, it appears that Petitioner was a victim of generalized gang violence in El Salvador, which does not make him eligible for relief.

**VI.     Conclusion**

Accordingly, we deny the petition for review.

10