# Matter of E-A-G-, Respondent

*Decided July 30, 2008*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

(1)  The respondent, a young Honduran male, failed to establish that he was a member of a particular social group of "persons resistant to gang membership," as the evidence failed to establish that members of Honduran society, or even gang members themselves, would perceive those opposed to gang membership as members of a social group.

(2)  Because membership in a criminal gang cannot constitute membership in a particular social group, the respondent could not establish that he was a member of a particular social group of "young persons who are perceived to be affiliated with gangs" based on the incorrect perception by others that he is such a gang member.

FOR RESPONDENT:  Scott R. Pasierb, Esquire, Richmond, Virginia

FOR THE DEPARTMENT OF HOMELAND SECURITY:  Nancy A. Kryzanowski, Assistant Chief Counsel

BEFORE:  Board Panel:  FILPPU, COLE, and PAULEY, Board Members.

FILPPU, Board Member:

In a decision dated May 3, 2005, an Immigration Judge found the respondent removable but granted his application for asylum pursuant to section 208 of the Immigration and Nationality Act, 8 U.S.C. § 1158 (2000 & Supp. V 2005). The Department of Homeland Security ("DHS") has filed a timely appeal contesting the Immigration Judge's grant of asylum.  The appeal will be sustained, and the record will be remanded to the Immigration Judge for further proceedings and for the entry of a new decision.

## I.  FACTUAL AND PROCEDURAL HISTORY

### A.  Facts

The respondent, a native and citizen of Honduras, conceded removability in proceedings before the Immigration Judge but requested relief based on his claim of persecution.  At his hearing, the respondent testified that his eldest brother was a member of the Mara Salvatrucha ("MS") gang in Honduras for

3 months and was shot and killed in 2001 at the age of 16 by members of a rival gang, "The 18," during a "gang war." He indicated that the person primarily responsible for his brother's death was a person nicknamed "The Spy," and that he believed that his mother had filed a police report about the killing. He stated that "The Spy" was subsequently arrested by the police, but that he was unsure whether it was because of his brother's death or other reasons, as "The Spy" had committed many other crimes. He indicated that he did not know whether anyone in his family had ever followed up on the crime report filed after his brother's death.

Similarly, the respondent testified that a second brother subsequently joined the MS at age 18 and was killed by other members of the MS in 2003 at age 19, after only 5 or 6 months of membership. According to the respondent, his second brother was killed because he became a Christian and left the MS, which the gang would not allow. He indicated that his grandparents filed a police report, and that he believed that this case was still open, with the Honduran police still investigating the death. The respondent testified that he was approached by his cousin, an MS member, on several occasions and asked if he wanted to join the MS, but the respondent said no each time, to which his cousin replied, "No problem."

The respondent indicated that following the deaths of his brothers, persons he believed to be gang members issued written and oral threats to his mother on three occasions telling her to take the family and leave their home. However, he testified that he did not know why they wanted the family to leave. The respondent stated that following a threat in 2004, all of his family except him left for another town, but he remained behind in school. The respondent did not claim to have experienced any harm or threats of harm while he remained behind, and he noted that his mother and the rest of the family moved back to their hometown a few months later, as they discovered that there was a lot of gang violence in the other town as well. He indicated that the last threat his mother received was in 2005, in the form of a note telling her to vacate her home within 3 months. However, he testified that she did not leave as instructed, and that nothing has since happened to her or any other family members as a result.

## B. Immigration Judge's Decision

The Immigration Judge found the respondent to be credible. She determined that while the respondent had not experienced any past persecution in Honduras, he had met his burden of showing that he has a well-founded fear of persecution on account of a protected ground under the Act. The Immigration Judge specifically found that the respondent would be targeted for persecution by gang members because of his "youth and affiliation or

perceived affiliation with gangs," as well as his imputed political opinion. The Immigration Judge indicated that because she was granting asylum, she did not find it necessary to reach the issues of the respondent's eligibility for withholding of removal pursuant to section 241(b)(3) of the Act, 8 U.S.C. § 1231(b)(3) (2000), and for protection under the United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, *adopted and opened for signature* Dec. 10, 1984, G.A. Res. 39/46. 39 U.N. GAOR Supp. No. 51, at 197, U.N. Doc. A/RES/39/708 (1984) (entered into force June 26, 1987; for the United States Apr. 18, 1988) ("Convention Against Torture"), pursuant to 8 C.F.R. § 1208.16(c)(2) (2005).

## II. ANALYSIS

The Immigration Judge found, and we agree, that the respondent did not experience any past persecution in Honduras. Neither party argues otherwise on appeal. However, we disagree with the Immigration Judge's determination that the respondent has sustained his burden of showing that he has a well-founded fear of persecution in Honduras on account of a protected ground under the Act. Sections 101(a)(42)(A), 208(b)(1)(B) of the Act, 8 U.S.C. §§ 1101(a)(42)(A), 1158(b)(1)(B) (2006).

### A. Particular Social Group

The Immigration Judge found that the respondent was a member of the particular social groups of "young persons who are perceived to be affiliated with gangs (as perceived by the government and/or the general public)" and "persons resistant to gang membership (refusing to join when recruited)." To establish that he is a member of a "particular social group," an applicant must show that he is a member of a group of persons sharing a common characteristic that they either cannot change or should not be required to change because it is "fundamental to their individual identities or consciences." *Ontunez-Tursios v. Ashcroft*, 303 F.3d 341, 352 (5th Cir. 2002) (citing *Matter of Acosta*, 19 I&N Dec. 211, 233-34 (BIA 1985), which rejected a claimed social group of Salvadoran taxi drivers because the characteristics that defined them were not beyond their power to change or so fundamental that change ought not be required).

In a decision published as a companion to this case, we set forth in some detail the history of the evolving case law at both the Board and the various Federal circuit courts of appeals concerning particular social groups, and the reader is referred to that decision for a more in-depth historical overview. *See Matter of S-E-G-*, 24 I&N Dec. 579 (BIA 2008) (holding that neither Salvadoran youth who refused recruitment into the MS-13 criminal gang nor

their family members constitute a particular social group).  In recent years, we have issued a line of cases reaffirming the particular social group formula set forth in *Matter of Acosta*, *supra*, and providing further clarification regarding its proper application.  *See Matter of A-T-*, 24 I&N Dec. 296 (BIA 2007) (indicating that young Bambara women who oppose arranged marriage were not a particular social group); *Matter of A-M-E- & J-G-U-*, 24 I&N Dec. 69, 74-75 (BIA 2007) (holding that "affluent Guatemalans" did not constitute a particular social group); *Matter of C-A-*, 23 I&N Dec. 951, 959-61 (BIA 2006) (finding that noncriminal informants working against the Cali drug cartel in Colombia were not a particular social group), *aff'd*, *Castillo-Arias v. U.S. Att'y Gen.*, 446 F.3d 1190 (11th Cir. 2006), *cert. denied sub nom. Castillo-Arias v. Gonzales*, 127 S. Ct. 977 (2007).  In each of these cases, we emphasized that the purported group's social visibility—i.e., the extent to which members of a society perceive those with the characteristic in question as members of a social group—is of particular importance in determining whether an alien is a member of a claimed particular social group.  *See, e.g.*, *Matter of C-A-*, *supra* (indicating that the social visibility of the members of a claimed social group is an important consideration in identifying the existence of a particular social group for the purpose of determining whether a person qualifies as a refugee).

In *Matter of A-T-*, *supra*, at 303, we expressed skepticism that young Bambara women who oppose arranged marriage "have the kind of social visibility that would make them readily identifiable to those who would be inclined to persecute them," and thus declined to find such a particular social group.  Similarly, in *Matter of A-M-E- & J-G-U-*, *supra*, at 74-75, we found that the respondents had failed to establish that their status as "affluent Guatemalans" gave them sufficient social visibility to be perceived as a group by society.  Finally, in *Matter of C-A-*, *supra*, at 960, we indicated that government informants were insufficiently recognizable as a group to others, noting that the very nature of the conduct of confidential informants is such that it is generally out of the public view.

Applying these standards, we find that the particular social group identified by the Immigration Judge as "persons resistant to gang membership" lacks the social visibility that would allow others to identify its members as part of such a group.  Persons who resist joining gangs have not been shown to be part of a socially visible group within Honduran society, and the respondent does not allege that he possesses any characteristics that would cause others in Honduran society to recognize him as one who has refused gang recruitment.  Of course, individuals who resist gang recruitment may face the risk of harm from the rejected gang.  But such a risk would arise from the individualized reaction of the gang to the specific behavior of the prospective recruit.  There is no showing that membership in a larger body of persons resistant to gangs

is of concern to anyone in Honduras, including the gangs themselves, or that individuals who are part of that body of persons are seen as a segment of the population in any meaningful respect.

Similarly, while the respondent, as a young, urban male in Honduras, might well be suspected by others to have been approached by gangs seeking his membership, and to have rejected such overtures, we have previously held that a purely statistical showing is not by itself sufficient proof of the existence of a persecuted group. Our case law establishes that a "social group" analysis must focus on fundamental characteristics and social visibility within the country in question. The focus is not with statistical or actuarial groups, or with artificial group definitions. Rather, the focus is on the existence and visibility of the group in the society in question and on the importance of the pertinent group characteristic to the members of the group.

Thus, in *Matter of Sanchez and Escobar*, 19 I&N Dec. 276, 285 (BIA 1985), *aff'd sub nom. Sanchez-Trujillo v. INS*, 801 F.2d 1571 (9th Cir. 1986), we rejected the respondent's claim that he was a member of the particular social group of "young (18 to 30 years of age), urban, working-class males of military age who have not served in the military or otherwise affirmatively demonstrated their support for the Government of El Salvador." We found that "[i]t is not enough to simply identify the common characteristics of a statistical grouping of a portion of the population at risk." *Id.* Rather, we determined that there must be a showing that the claimed persecution is on account of the group's identifying characteristics. *Id.* at 285-86. No such showing has been made here.

As to the second particular social group identified by the Immigration Judge, i.e., "young persons who are perceived to be affiliated with gangs," the issue of social visibility is less clear-cut. Gang affiliation or membership is a recognized evil within Honduran society, and members of gangs are viewed with hostility by society at large. Clearly, rival gangs recognize each other, often with disdain leading to violent confrontations. Gang membership does, therefore, entail some "social visibility." However, as explained below, we reject this particular social group for other reasons.

It does not appear that the United States Court of Appeals for the Fifth Circuit has yet had an opportunity to address the question whether gang membership, or, in this case, the perception of being a gang member or "affiliated" with gangs, is a proper basis for finding a particular social group to exist. However, a sister circuit has recently issued a precedent decision that we find instructive on this issue. In *Arteaga v. Mukasey*, 511 F.3d 940 (9th Cir. 2007), the Ninth Circuit considered whether an alien's membership in a violent criminal gang, including his status as a former or "inactive" gang member, could constitute a particular social group for immigration law purposes. The Ninth Circuit offered the following observation:

> [E]ven if we focus our inquiry not on Arteaga's [gang-related] tattoos, but on his unique and shared experience as a gang member, this characteristic is materially at war with those we have concluded are innate for purposes of membership in a social group. Arteaga's "shared past experience" includes violent criminal activity. We cannot conclude that Congress, in offering refugee protection for individuals facing potential persecution through social group status, intended to include violent street gangs who assault people and who traffic in drugs and commit theft.

*Arteaga v. Mukasey*, *supra*, at 945-46 (citations omitted). Accordingly, the Ninth Circuit held that membership in a gang would not constitute membership in a particular social group. We agree.

Treating affiliation with a criminal organization as being protected membership in a social group is inconsistent with the principles underlying the bars to asylum and withholding of removal based on criminal behavior. *See* sections 208(b)(2), 241(b)(3)(B) of the Act. Of course, the respondent in this case is not, and has never been, a member of any criminal gang. Moreover, we recognize that persons such as the respondent who are subject to gang recruitment can face genuine human dilemmas. Nevertheless, because we agree that membership in a criminal gang cannot constitute a particular social group, the respondent cannot establish particular social group status based on the incorrect perception by others that he is such a gang member. *See also Castellano-Chacon v. INS*, 341 F.3d 533 (6th Cir. 2003) (rejecting the alien's claim that, as a tattooed former gang member, he was entitled to withholding of removal as a member of a social group).

## B. Political Opinion

We also disagree with the Immigration Judge's determination that the respondent faces persecution in Honduras on account of his political opinion. While not entirely clear, it appears that the Immigration Judge concluded that the respondent would be found to have an anti-MS "political opinion" by members of MS, a pro-MS "political opinion" by rival gang members, and a generally pro-gang "political opinion" by the Honduran Government. Initially, we note that the respondent has not alleged that he fears the Honduran Government itself, but rather only that he fears violence at the hands of gang members. Therefore the third basis for political opinion identified by the Immigration Judge appears to be inapplicable. Indeed, the respondent testified that he has never had any problems with the police in Honduras.

Moreover, the respondent's refusal to join MS, without more, does not constitute a "political opinion." Nor would any harm befalling the respondent as a result of such refusal normally be found to be motivated by a political opinion. In *Rivas-Martinez v. INS*, 997 F.2d 1143, 1148 (5th Cir. 1993), the court indicated that an alien seeking asylum to avoid conscription must adduce some evidence, direct or circumstantial, that her opposition was motivated by

her political opinions, that her political opposition was known to guerrillas, and that they persecuted her, or likely would do so upon her return, because of that opinion. No such evidence has been submitted here. On the contrary, the respondent conceded that when he indicated he was not interested in joining MS, he was simply told that it was "no problem" and was not further bothered by MS.

We recognize that the Immigration Judge specifically found that "the gangs in Honduras are against the government," and much of her political opinion analysis focused on this determination. However, as the United States Supreme Court has stated, persecution or well-founded fear of persecution on account of political opinion refers to persecution on account of *the victim's* political opinion, not *the persecutor's* political opinion. *INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992) (finding that a Guatemalan guerrilla organization's attempt to conscript the alien into its military forces did not necessarily constitute persecution on account of political opinion).

In this case, no evidence, either direct or circumstantial, has been produced to show that gangs in Honduras would persecute the respondent because of any political opinion, real or imputed, that he holds. Instead, any such actions would appear to be motivated by rivalry between gangs and a desire of rival gangs to increase their own power and influence and to diminish that of their rivals. Accordingly, we disagree with the Immigration Judge's determination that the respondent would be subject to persecution on account of his political opinion by gangs in Honduras.

## C. Well-Founded Fear

We also disagree with the Immigration Judge's determination that the respondent has shown that he has a well-founded fear of harm. The respondent is not in the same situation as either of his elder brothers, as he is not, and never has been, a member of the MS or any other gang. Moreover, while he testified that he was approached by his cousin, an MS member, on several occasions and asked if he wanted to join the MS, the respondent said no each time, to which his cousin replied, "No problem." The respondent did not testify to any additional attempts to get him to join MS, or of any threats or harm as a result of his refusal to do so. Although the respondent appears to suggest that the MS gang members may, one day, change their minds and harm him because of his past refusal to join them, this suggestion appears to be entirely speculative. *See Chen v. Gonzales*, 470 F.3d 1131, 1137 (5th Cir. 2006) (affirming an Immigration Judge's denial of asylum where the alien's professed fear of future persecution was "highly speculative").

While the respondent testified that gangs came to his house and ordered his mother to move out within 3 months, he acknowledged that she did not do so

and that no further threats were issued against her. In any case, it does not appear that these threats were in any way related to the respondent or his refusal to join a gang, and, in fact, the respondent specifically testified that he did not know why the gang members wanted his mother to leave. The respondent testified that gang violence is prevalent in Honduras, but such a situation does not establish a well-founded fear of persecution. *See Campos-Guardado v. INS*, 809 F.2d 285, 290 (5th Cir. 1987) (stating that "Congress did not intend to confer eligibility for asylum on all persons who suffer harm from civil disturbances"). Furthermore, the respondent concedes that the Honduran Government has passed laws to protect citizens from gang violence, and in the case of the deaths of both of his brothers, the police took reports and investigated the crimes, although the respondent had no knowledge of the results of the investigations. *See, e.g.*, *Adebisi v. INS*, 952 F.2d 910 (5th Cir. 1992) (agreeing with our determination that because the alien's fear of persecution was the result of a personal dispute and not the conduct of the government or a group that the government was unable or unwilling to control, the alien was not entitled to asylum or withholding of deportation).

## III. CONCLUSION

Inasmuch as the respondent has failed to satisfy the lower burden of proof required to establish eligibility for asylum, it follows that he has also failed to satisfy the clear probability standard required for withholding of removal. *See Matter of Mogharrabi*, 19 I&N Dec. 439 (BIA 1987). In addition, the respondent did not check the box on his Application for Asylum and Withholding of Removal (Form I-589) indicating that he was seeking protection under the Convention Against Torture, and at no time during his hearing did he state that he was seeking such protection or present any arguments pertaining to such a claim. Accordingly, we find no basis to grant the respondent protection under the Convention Against Torture or to remand the record to the Immigration Judge for consideration of such protection.

Nevertheless, in light of Immigration Judge's statement that she did not need to address the respondent's eligibility for voluntary departure pursuant to section 240B of the Act, 8 U.S.C. § 1229c (2000), because of her grant of asylum, we find it appropriate to remand this matter to the Immigration Judge for the purpose of determining whether the respondent is seeking, and is eligible for, this limited form of relief. Accordingly, the DHS's appeal will be sustained and the record will be remanded to the Immigration Judge.

**ORDER:** The appeal of the Department of Homeland Security is sustained.

**FURTHER ORDER:** The record is remanded to the Immigration Judge for further proceedings consistent with the foregoing opinion and for the entry of a new decision.