# Matter of K-E-S-G-, Respondent

*Decided July 18, 2025*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

A particular social group defined by the alien's sex or sex and nationality, standing alone, is overbroad and insufficiently particular to be cognizable.

FOR THE RESPONDENT: Maya Lugasy, Esquire, Cleveland, Ohio

FOR THE DEPARTMENT OF HOMELAND SECURITY: Enoch Y. Chang, Associate Legal Advisor

BEFORE: Board Panel: HUNSUCKER, MONTANTE, BAIRD, Appellate Immigration Judges.

BAIRD, Appellate Immigration Judge:

This case is before the Board pursuant to a June 25, 2024, order of the United States Court of Appeals for the Sixth Circuit. The Sixth Circuit granted the Government's unopposed motion to remand for further consideration of the respondent's applications for asylum and withholding of removal. Sections 208(b)(1)(A) and 241(b)(3)(A) of the Immigration and Nationality Act ("INA"), 8 U.S.C. §§ 1158(b)(1)(A), 1231(b)(3)(A) (2018). Both parties have filed briefs following remand, including supplemental briefs at the Board's request. The respondent has also filed a separate motion to remand seeking to apply for new relief. Because we conclude that the respondent is not a member of a cognizable particular social group, the appeal will once again be dismissed. The record will be remanded.

## I. PROCEDURAL HISTORY

In 2019, the Immigration Judge denied the respondent's applications for asylum and withholding of removal based on an adverse credibility determination and, alternatively, because the respondent did not establish that her proposed particular social groups of "Salvadoran women" and

"Salvadoran women viewed as property" were cognizable.[1] The Immigration Judge also denied the respondent's application for protection under the regulation implementing the Convention Against Torture ("CAT").[2] The respondent appealed, and on August 7, 2023, the Board dismissed the appeal. The respondent filed a petition for review with the Sixth Circuit.

In 2024, the Government requested a remand for the agency to more fully consider the particularity of the respondent's proposed particular social groups.[3] The Government's motion to remand noted that the Immigration Judge's decision repeatedly cited to *Matter of A-B-*, 27 I&N Dec. 316 (A.G. 2018) ("*Matter of A-B- I*"), which was vacated after the Immigration Judge's decision by *Matter of A-B-*, 28 I&N Dec. 307 (A.G. 2021) ("*Matter of A-B- III*").[4] The Sixth Circuit granted the motion and remanded the record to the Board.

## II. PARTICULAR SOCIAL GROUP

The phrase "membership in a particular social group" is ambiguous and quintessentially difficult to define. *Matter of M-E-V-G-*, 26 I&N Dec. 227, 230 (BIA 2014); *see also Fatin v. INS*, 12 F.3d 1233, 1238 (3d Cir. 1993) ("Read in its broadest literal sense, the phrase [particular social group] is almost completely open-ended."). The Supreme Court has specifically recognized the need under certain circumstances for circuit courts to remand

---

[1] We decline to rely on the adverse credibility finding and consider the respondent credible in our analysis.

[2] The Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, Dec. 10, 1984, S. Treaty Doc. No. 100-20, 1465 U.N.T.S. 85 (entered into force for United States Nov. 20, 1994).

[3] Neither the Sixth Circuit's remand nor the Government's unopposed motion asks us to reconsider CAT protection, and neither party has raised it following remand. We consider the denial of CAT protection to remain final and undisturbed and do not revisit it here. Similarly, we consider the determination in our prior decision that the Immigration Judge had subject matter jurisdiction to also be final.

[4] As directed in *Matter of A-B- III*, the Board follows pre-*Matter of A-B- I* precedent, including *Matter of A-R-C-G-*, 26 I&N Dec. 388 (BIA 2014). Thus, we reach our conclusions in this case independent of *Matter of A-B- I*. We decline the respondent's request to remand the record to the Immigration Judge to reassess her eligibility for asylum and related relief following *Matter of A-B- III*, as the Immigration Judge's findings and conclusions are otherwise supported by controlling law and precedent decisions.

to the Board for a determination as to whether an asylum applicant falls within the statutory term "particular social group." *See Gonzales v. Thomas*, 547 U.S. 183, 185–87 (2006) (finding that it was improper for the circuit court to determine that an alien's proposed social group was cognizable, as the proper course was to remand this issue to the Board for an initial agency determination); *see also INS v. Aguirre-Aguirre*, 526 U.S. 415, 425 (1999) ("[W]e have recognized that judicial deference to the Executive Branch is especially appropriate in the immigration context.").

The Board has previously held that a cognizable particular social group must be "(1) composed of members who share a common immutable characteristic, (2) defined with particularity, and (3) socially distinct within the society in question." *Matter of M-E-V-G-*, 26 I&N Dec. at 237; *see also Matter of W-G-R-*, 26 I&N Dec. 208, 212–18 (BIA 2014), *vacated in part on other grounds sub nom. Reyes v. Lynch*, 842 F.3d 1125 (9th Cir. 2016). Although there is some overlap between the "particularity" and "social distinction" requirements, each requirement is necessary to properly determine whether a proposed group is cognizable under the INA. *See Matter of M-E-V-G-*, 26 I&N Dec. at 240–41.

To satisfy the particularity requirement, the proposed "group must . . . be discrete and have definable boundaries—it must not be amorphous, overbroad, diffuse, or subjective." *Matter of M-E-V-G-*, 26 I&N Dec. at 239; *Matter of W-G-R-*, 26 I&N Dec. at 214. As part of the particularity requirement, societal considerations will necessarily play a factor in determining whether the group is discrete or amorphous. *Matter of M-E-V-G-*, 26 I&N Dec. at 241; *Matter of W-G-R-*, 26 I&N Dec. at 214.

We review de novo whether the respondent's proposed particular social groups of Salvadoran women and Salvadoran women viewed as property are cognizable.[5] *See Matter of A-R-C-G-*, 26 I&N Dec. 388, 390 (BIA 2014); 8 C.F.R. § 1003.1(d)(3)(ii) (2025).

---

[5]   The respondent contends in her supplemental brief following remand from the Sixth Circuit that we erred in our prior decision by framing the respondent's proposed social groups differently from the Immigration Judge's identification of those groups. Our prior decision referenced women of El Salvador treated and viewed as property. We have made that correction as requested and now analyze the respondent's proposed particular social groups as specifically identified by the Immigration Judge.

### A. Particular Social Groups Based on Sex

We acknowledge that sex is an immutable characteristic. *See Matter of Acosta*, 19 I&N Dec. 211, 233 (BIA 1985) (recognizing sex as an innate characteristic), *overruled on other grounds by Matter of Mogharrabi*, 19 I&N Dec. 439 (BIA 1987). However, "not every 'immutable characteristic' is sufficiently precise to define a particular social group." *Matter of M-E-V-G-*, 26 I&N Dec. at 239. A proposed particular social group based solely on sex or sex and nationality must also satisfy the particularity and social distinction requirements for a cognizable group. *See Matter of M-E-V-G-*, 26 I&N Dec. at 237; *see also Matter of W-G-R-*, 26 I&N Dec. at 212–18.

### 1. Circuit Court Case Law

We begin our analysis by acknowledging that some circuit courts, most notably the Ninth Circuit, have questioned the premise that a particular social group defined solely by sex is too broad to be cognizable under the INA. *See Perdomo v. Holder*, 611 F.3d 662, 667–69 (9th Cir. 2010); *see also De Pena-Paniagua v. Barr*, 957 F.3d 88, 97 (1st Cir. 2020) (noting that the First Circuit has "never held . . . that 'women' as a descriptor of a group lack[s] particularity"). In *Perdomo v. Holder*, the Ninth Circuit rejected the Board's conclusion that the alien's proposed particular social group of "all women in Guatemala" was not cognizable because it was overly broad, internally diverse, and constituted a "mere demographic division . . . rather than a particular social group." 611 F.3d at 668. It noted that simply because a proposed group is large and perhaps comprises a "sweeping demographic division" within the alien's home country does not render it per se not cognizable. *Id.* at 668–69.

The Ninth Circuit also disagreed that the characteristics of breadth and internal diversity rendered the proposed group not cognizable. *See id.* It held based on prior Board precedent that the focus should be on whether the proposed particular social group is defined by "innate characteristics" and noted that it had found two other groups—"homosexuals" and "Gypsies"—to be cognizable despite each group being broad and internally diverse. *Id.* The Ninth Circuit further stated that when it did reject proposed particular social groups as too broad, it was because there was "no unifying relationship or *characteristic* to narrow th[e] diverse and disconnected group." *Id.* at 668 (alteration in original) (quoting *Ochoa v. Gonzales*, 406 F.3d 1166, 1171 (9th Cir. 2005)). The court remanded for the Board to determine whether

women in Guatemala constitutes a particular social group under its precedent and that of the Board.

The Ninth Circuit's decision in *Perdomo* was based on a prior definition of a particular social group. After the Ninth Circuit's remand, the Board issued *Matter of M-E-V-G-*, 26 I&N Dec. at 237, and *Matter of W-G-R-*, 26 I&N Dec. at 212–18, clarifying that the requirements of a particular social group are immutability, particularity, and social distinction. In *Reyes v. Lynch*, 842 F.3d at 1133, the Ninth Circuit endorsed the three-part test for establishing a particular social group articulated in *Matter of M-E-V-G-* and *Matter of W-G-R-*. *See also Villegas Sanchez v. Garland*, 990 F.3d 1173, 1180 (9th Cir. 2021). In examining the particularity requirement, the Ninth Circuit explained:

> The [Board]'s statement of the purpose and function of the "particularity" requirement does not, on its face, impose a numerical limit on a proposed social group or disqualify groups that exceed specific breadth or size limitations. Nor is it contrary to the principle that diversity within a proposed particular social group may not serve as the *sine qua non* of the particularity analysis. Rather, the [Board] imposes the "particularity" requirement in order to distinguish between social groups that are discrete and those that are amorphous.

*Reyes*, 842 F.3d at 1135 (citations omitted).

Since *Perdomo*, the Ninth Circuit has upheld Board decisions concluding that the applicants did not establish their proposed social groups were sufficiently particular due, in part, to the large size of the group involved. *See, e.g.*, *Macedo Templos v. Wilkinson*, 987 F.3d 877, 882 (9th Cir. 2021) (finding the proposed social group of wealthy business owners not particular "because it could include large swaths of people and various cross-sections of a community"); *Mendoza Alvarez v. Holder*, 714 F.3d 1161, 1164 (9th Cir. 2013) (holding that the applicant's proposed social groups were not particular because they "include[d] large numbers of people with different conditions and in different circumstances" and "swe[pt] up a large and disparate population").

Other circuits have questioned the reasoning in *Perdomo* following the updated definition of a particular social group. In *Chavez-Chilel v. Att'y Gen. U.S.*, 20 F.4th 138, 146 n.8 (3d Cir. 2021), the Third Circuit specifically declined to follow the Ninth Circuit's reasoning in *Perdomo*, stating that *Perdomo* "rested on the Ninth Circuit's two-part definition" of a particular social group, which is inconsistent with the three-part test for a particular social group endorsed by the Third Circuit and the Board. In that

149

case, the Third Circuit found that "the size of the group standing alone would not disqualify a group from being a [particular social group]." *Chavez-Chilel*, 20 F.4th at 146. However, the alien's proposed social group consisting of "Guatemalan women" was not defined with particularity where there was "no record evidence that all Guatemalan women share a unifying characteristic that results in them being targeted for any form of persecution based solely on their [sex]." *Id*. Recognizing that other courts have concluded that a particular social group based on all women in a particular country is overbroad, the Third Circuit found no "[r]eason[] to depart from this general rule." *Id*.

Several other circuits have acknowledged that an individual's sex, standing alone or in conjunction with nationality, is insufficient to constitute a cognizable social group.[6] As recognized by the Second Circuit, "the attributes of a particular social group must be recognizable and discrete" and "[p]ossession of broadly-based characteristics such as youth and [sex] will not by itself endow individuals with membership in a particular social group." *Gomez v. INS*, 947 F.2d 660, 664 (2d Cir. 1991).

In a recent case, the Fifth Circuit rejected the applicant's proposed social group because, when stripped of the illicit element of persecution, it consisted only of "Honduran women" and the Fifth Circuit found this group insufficiently particular. *Jaco v. Garland*, 24 F.4th 395, 407 (5th Cir. 2021). The Eleventh Circuit, in evaluating the proposed group of "women in Mexico who are unable to leave their domestic relationship," similarly noted that the immutable characteristic of being women "alone is insufficient to make them cognizable as a particular social group under the INA." *Amezcua-Preciado v. U.S. Att'y Gen.*, 943 F.3d 1337, 1344 (11th Cir. 2019). Additionally, the Tenth Circuit has recognized that "[sex] alone is not a sufficiently distinct 'social group' on which to base a 'refugee' finding." *Maatougui v. Holder*, 738 F.3d 1230, 1241 (10th Cir. 2013). Finally, the Eighth Circuit previously rejected a proposed group of "all Iranian women" because despite "the harsh restrictions placed on them, . . . no factfinder could reasonably conclude that all Iranian women had a well-founded fear of persecution based solely on

---

[6] Although the Sixth Circuit has not addressed this issue in a published decision, it has rejected proposed groups based on sex as overbroad in an unpublished decision. *See Rodriguez-Lopez v. Garland*, No. 20-4087, 2021 WL 3140324, at *4 (6th Cir. July 26, 2021) (stating with respect to the proposed groups of "Guatemalan women" and "indigenous Guatemalan women" that the court "often ha[s] dismissed proposed social groups as too broad or too generalized, and frequently with groups much narrower than this").

their [sex]." *Safaie v. INS*, 25 F.3d 636, 640 (8th Cir. 1994),[7] *superseded by statute on other grounds*, Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Div. C of Pub. L. No. 104-208, §§ 304(a)(3), 306(a)(2), 110 Stat. 3009-546, 3009-597, 3009-607 to 3009-608).

### 2. Sex Alone Not a Protected Ground

Consistent with the Federal circuit court decisions cited above, we hold that a particular social group defined by the alien's sex or sex and nationality, standing alone, is overbroad and insufficiently particular to be cognizable under the INA.[8] *See Matter of W-G-R-*, 26 I&N Dec at 214 (explaining that particularity "chiefly addresses the question of delineation"). Groups defined solely by the characteristics of sex and nationality contain no narrowing features such as a specific age range or a specific position in the country's society or its economy. These proposed groups are too broad and diffuse, encompassing a diverse cross section of society of widely varying ages, socioeconomic statuses, marital statuses, family backgrounds, and lifestyles. *See Alvarado v. U.S. Att'y Gen.*, 984 F.3d 982, 992 (11th Cir. 2020) (rejecting a proposed group based, in part, on sex for similar reasons)

If we held that groups defined solely by sex were cognizable, we would essentially create another protected ground under the INA—that of sex—to add to the grounds of race, religion, nationality, membership in a particular social group, or political opinion. Had Congress or the drafters of the United Nations Convention Relating to the Status of Refugees, *opened for signature* July 28, 1951, 19 U.S.T. 6259, 189 U.N.T.S. 150 (entered into force Apr. 22, 1954) ("Convention"), or the United Nations Protocol Relating to the Status of Refugees, *opened for signature* Jan. 31, 1967, 19 U.S.T. 6223, 606 U.N.T.S. 267 (entered into force Oct. 4, 1967; for the United States Nov. 1, 1968) ("Protocol"), intended sex in and of itself to be a protected ground, they could have specifically listed it as a separate ground. *See generally* INA § 101(a)(42), 8 U.S.C. § 1101(a)(42) (2018).

The respondent has not cited to anything in the INA, the Convention, the Protocol, or the negotiating history of those documents that reflects that the

---

[7] In a subsequent case involving female genital mutilation, the Eighth Circuit distinguished *Safaie* and held that "Somali females" was a particular social group because of the prevalence—98 percent—of female genital mutilation in the country. *Hassan v. Gonzales*, 484 F.3d 513, 515, 518 (8th Cir. 2007).

[8] The present case does not involve a claim of female genital mutilation and our holding in this case does not affect the viability of such claims in the future.

drafters intended for sex to be a specific protected ground. *See generally Sale v. Haitian Ctrs. Council, Inc.*, 509 U.S. 155, 171 (1993) (considering the text and negotiating history of the Convention, along with the text and structure of the INA, in interpreting the withholding of deportation statute). Similar to race and nationality, sex is beyond the power of an individual to change. *Frontiero v. Richardson*, 411 U.S. 677, 686 (1973) ("[S]ex, like race and national origin, is an immutable characteristic determined solely by the accident of birth . . . ."). It would have been an obvious choice to have included sex as one of the expressly enumerated grounds for persecution if sex alone was intended to form a basis for protection.

It is not the role of the Board to add a specific protected ground that was not included by Congress and the drafters of the Convention and the Protocol. *See Chan v. Korean Air Lines, Ltd.*, 490 U.S. 122, 1335 (1989) ("We are to find out the intention of the parties by just rules of interpretation applied to the subject matter; and having found that, our duty is to follow it as far as it goes, and to stop where that stops—whatever may be the imperfections or difficulties which it leaves behind." (quoting *The Amiable Isabella*, 19 U.S. (6 Wheat.) 1, 71 (1821))). Congress and the drafters of the Convention and the Protocol did not specifically identify sex as a protected ground, and we conclude that a particular social group based on sex alone is not sufficiently cognizable, given our review of this issue and the view of several Federal circuits.

### 3. Application to the Respondent

The Immigration Judge properly found that the respondent did not establish that her proposed particular social group of Salvadoran women satisfied the particularity requirement for a cognizable group.[9] *See*

---

[9] The same particularity analysis applies to proposed groups based on women as it does to proposed groups based on men. The Board has rejected various particular social group claims defined (at least in part) on a person's sex in applications for asylum and related relief brought by men. *See Matter of Sanchez and Escobar*, 19 I&N Dec. 276, 285 (BIA 1985), *aff'd sub nom. Sanchez-Trujillo v. INS*, 801 F.2d 1571 (9th Cir. 1986). In *Matter of Sanchez and Escobar*, we rejected the particular social group of "young (18 to 30 years of age), urban, working-class males of military age who have not served in the military or otherwise affirmatively demonstrated their support for the Government of El Salvador" despite a showing that statistically "many of those being killed in El Salvador are young males." *Id.*; *see also Matter of Vigil*, 19 I&N Dec. 572, 575 (BIA 1988) (rejecting the applicant's particular social group claim involving "'male, young, urban, unenlisted' Salvadorans"). In *Matter of S-E-G-*, 24 I&N Dec. 579, 585 (BIA 2008), we also rejected a particular social group claim involving young males who refused recruitment from a criminal gang as insufficiently particular, noting that they "make up a

*Matter of M-E-V-G-*, 26 I&N Dec. at 237; *Matter of W-G-R-*, 26 I&N Dec. at 213–15. While this group shares the characteristic of women from El Salvador, it otherwise encompasses a large, diffuse, and disconnected portion of El Salvador's population with few unifying characteristics.[10] *See Matter of S-E-G-*, 24 I&N Dec. 579, 585 (BIA 2008) (concluding that the proposed social groups were not particular because they make up "a potentially large and diffuse segment of society"). The group encompasses women from various age groups, socioeconomic statuses, levels of education, religions, and widely diverse cultural backgrounds. *See Matter of J-G-D-F-*, 27 I&N Dec. 82, 89 (BIA 2017) (finding a proposed social group not particular because it is amorphous and lacks definable boundaries). Thus, the proposed group is too broad and diffuse to satisfy the particularity requirement.

We are not persuaded by the respondent's arguments that evidence that women in El Salvador face disproportionate levels of violence and that legislation has been enacted in that country to protect women establishes her group as discrete.[11] The country conditions evidence reflects that "[g]ang violence and crime in El Salvador appear to be widespread, and the risk of harm . . . affects all segments of the population."

_____

potentially large and diffuse segment of society." A contrary holding in this case could potentially undermine our prior decisions and lead to particular social groups based on all men satisfying the particularity requirement.

[10] In her supplemental brief, the respondent cites to several circuit court cases to support her claim that social groups defined solely by sex are per se cognizable. However, those cases are distinguishable because (among other things) the particular social groups addressed and found cognizable were not defined solely by sex or sex and nationality but included at least one additional unifying characteristic, such as women from a minority religion who have lived alone or widows. *See, e.g.*, *Cece v. Holder*, 733 F.3d 662, 671–72 (7th Cir. 2013) (holding that a group based on being young, female, from a minority religion, and living alone in Albania was a cognizable social group); *Ngengwe v. Mukasey*, 543 F.3d 1029, 1034 (8th Cir. 2008) (concluding that the Board erred in determining that Cameroonian widows was not a particular social group where the record established pervasive discrimination against women who survive their husband). Additionally, as noted above, this case does not involve a claim of female genital mutilation, and therefore we do not consider cases on that issue to be relevant here.

[11] The respondent's supplemental brief references unpublished decisions of the Board, which she has also submitted along with her brief. Unpublished Board decisions have no precedential value. *See Matter of D-E-B-*, 29 I&N Dec. 83, 84 n.2 (BIA 2025); *see also* 8 C.F.R § 1003.1(g)(2) (indicating that published decisions serve as precedent).

*Umaña-Ramos v. Holder*, 724 F.3d 667, 674 (6th Cir. 2013) (quoting *Matter of S-E-G-*, 24 I&N Dec. at 587).

That certain characteristics may make individuals more vulnerable to violence does not establish that individuals sharing that characteristic necessarily constitute a cognizable particular social group. *See, e.g.*, *Fuentes v. Barr*, 969 F.3d 865, 872 (8th Cir. 2020) (rejecting the proposed social group of "Salvadoran female heads of households" despite evidence that such women are vulnerable to harm); *Mayorga-Vidal v. Holder*, 675 F.3d 9, 16–17 (1st Cir. 2012) (rejecting the proposed particular social group of "young Salvadoran males who have resisted gang recruitment and are vulnerable to gangs from a lack of parental or family protection"); *Garcia-Callejas v. Holder*, 666 F.3d 828, 830 (1st Cir. 2012) (noting that the court has "rejected social groups based solely on perceived wealth, even if signaling an increased vulnerability to crime"). "It is well settled that victims of crime or those who fear crime are not members of valid social groups." *Matter of H-L-S-A-*, 28 I&N Dec. 228, 231 (BIA 2021); *see also* *Ucelo-Gomez v. Mukasey*, 509 F.3d 70, 73 (2d Cir. 2007) ("When the harm visited upon members of a group is attributable to the incentives presented to ordinary criminals rather than to persecution, the scales are tipped away from considering those people a 'particular social group' . . . .").

Because we agree with the Immigration Judge that the respondent's proposed group of Salvadoran women does not satisfy the particularity requirement, we need not address whether the proposed group satisfies the social distinction requirement. *See Matter of W-G-R-*, 26 I&N Dec. at 214 (noting that while there is some overlap between particularity and social distinction, they are separate requirements and both are necessary to form a cognizable group).

### B.  Particular Social Group of Women Viewed as Property

With regard to the respondent's second proposed group of Salvadoran women viewed as property, the group lacks the requisite particularity for a cognizable particular social group.  The group is not defined by clear benchmarks for determining who falls within the group.  *See, e.g.*, *Matter of W-G-R-*, 26 I&N Dec. at 214.  The respondent has not presented evidence that "viewed as property" has a commonly accepted definition in El Salvador. *See Matter of M-E-V-G-*, 26 I&N Dec. at 239.  It is not clear which women are viewed as property or who views them as property.  Thus, the group is too "amorphous, overbroad, diffuse, or subjective" to qualify as a particular social group under the INA.  *Id.*; *see also*

*Alvarado*, 984 F.3d at 992 (upholding the Board's determination that "Honduran women who are viewed as property" lacks sufficient particularity to qualify as a particular social group because the group "could include women of all ages, ethnicities, and social strata, who are in various types of relationships or no relationship at all").

The respondent also has not shown that Salvadoran society at large considers women in El Salvador viewed as property to comprise a distinct segment of society, such that the group would satisfy the social distinction requirement. *See Matter of W-G-R-*, 26 I&N Dec. at 216–17. The respondent's citation to general evidence concerning violence against women and widespread sexism is insufficient to establish "that society in general perceives, considers, or recognizes persons sharing the particular characteristic to be a group." *Id*.; *see also Villegas Sanchez v. Garland*, 990 F.3d 1173, 1181–82 (9th Cir. 2021) (holding that generalized statistics "that women in El Salvador can be ill-treated" does not establish that the specific proposed groups are socially distinct).

The respondent has not established that she is a member of a cognizable particular social group, and she does not claim eligibility for asylum or withholding of removal based upon any other statutorily protected ground. She is therefore ineligible for asylum or withholding of removal under the INA. *See* INA §§ 208(b)(1)(B)(i), 241(b)(3)(A), 8 U.S.C. §§ 1158(b)(1)(B)(i), 1231(b)(3)(A). As the lack of a cognizable social group is dispositive to the respondent's applications for asylum and withholding of removal, we need not reach her remaining arguments on appeal. *See INS v. Bagamasbad*, 429 U.S. 24, 25 (1976) (per curiam) ("As a general rule courts and agencies are not required to make findings on issues the decision of which is unnecessary to the results they reach."); *Matter of L-A-C-*, 26 I&N Dec. 516, 526 n.7 (BIA 2015) (declining to reach alternative issues on appeal regarding ineligibility for relief where an applicant is otherwise statutorily ineligible for such relief). The appeal will be dismissed.

## III. MOTION TO REMAND

After this matter was remanded by the Sixth Circuit, the respondent submitted a motion to remand through which she seeks to apply for new relief in the form of cancellation of removal under section 240A(b)(1) of the INA, 8 U.S.C. § 1229b(b)(1) (2018).[12] The respondent has submitted an

---

[12] The Sixth Circuit's remand order rendered our prior decision nonfinal. *See Martinez-Marroquin v. Gonzales*, 489 F.3d 778, 778 (6th Cir. 2007). Thus, the motion is

application for cancellation of removal together with sufficient evidence to establish that she meets the prima facie eligibility requirements for cancellation of removal. *See Hernandez-Perez v. Whitaker*, 911 F.3d 305, 319–21 (6th Cir. 2018) (addressing the standard of review for evaluating whether a motion to reopen establishes prima facie eligibility).

Based on the foregoing, the motion will be granted, and the record will be remanded to the Immigration Judge for the limited purpose of considering the merits of the respondent's application for cancellation of removal. We express no opinion as to the ultimate outcome of this case.

**ORDER:** The respondent's appeal is dismissed.

**FURTHER ORDER:** The respondent's motion is granted, and the record is remanded to the Immigration Judge for the limited purpose of allowing the respondent an opportunity to apply for cancellation of removal.

---

not subject to the time and number limitations placed on motions to reopen filed after a final administrative order of removal. *See Akhtar v. Gonzales*, 406 F.3d 399, 409 (6th Cir. 2005); *see also* 8 C.F.R. § 1003.2(c)(2) (2025) (stating that a party may file only one motion to reopen within 90 days of the final administrative decision).