# Matter of L-A-L-T-, Respondent

*Decided September 26, 2025*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

(1) Perceived or imputed membership in a proposed particular social group will only satisfy the particular social group requirements if the underlying group of which the respondent is perceived to be a member is, standing alone, sufficiently cognizable.

(2) The respondent's proposed particular social group, defined as "perceived Salvadoran gang members," is not cognizable within the meaning of the Immigration and Nationality Act. *Matter of E-A-G-*, 24 I&N Dec. 591 (BIA 2008), reaffirmed.

FOR THE RESPONDENT: Alaina M. Taylor, Esquire, Fairfax, Virginia

FOR THE DEPARTMENT OF HOMELAND SECURITY: Aidan Anderson, Assistant Chief Counsel

BEFORE: Board Panel: MULLANE, HUNSUCKER, and GOODWIN, Appellate Immigration Judges.

GOODWIN, Appellate Immigration Judge:

In a decision dated December 16, 2024, an Immigration Judge granted the respondent's application for asylum under section 208(b)(1)(A) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1158(b)(1)(A) (2018). The Department of Homeland Security ("DHS") has appealed from that decision, arguing that the Immigration Judge erred in concluding that the respondent is a member of a cognizable particular social group. The appeal will be sustained, and the record will be remanded.

## I. FACTUAL AND PROCEDURAL HISTORY

The respondent is a native and citizen of El Salvador. He testified that he is not a gang member, but that he has been harmed by police in El Salvador who believed he was a gang member. In 2018, six uniformed, armed Salvadoran police officers stopped and questioned the respondent and then proceeded to assault him for around 2 hours, insisting that he was a gang member. The police officers repeatedly demanded the respondent give them information about gang members and threatened to kill him.

In 2019 approximately five or six uniformed police officers stopped the respondent and his uncle, accusing them of being members of MS-13 because of the neighborhood where they lived.  When the respondent told the police he was not a gang member, the police officers accused him of lying before assaulting him for approximately 1 hour.  When they later dropped him off at his grandmother's house, they told the respondent's grandmother that the respondent was a watchman for MS-13 and that they would kill him the next time.

The respondent also described a separate incident in 2019 in which some of his classmates who were members of the 18th Street gang chased him, calling him an MS-13 member and accusing him of spying.  The respondent did not report that incident to Salvadoran authorities because of his prior experiences and his fear that the police would harm him.

The respondent entered the United States without being admitted or paroled in 2021 and was placed in removal proceedings.  Since his arrival in the United States, the respondent has been arrested for multiple offenses and has been convicted of drug possession.  In support of his application for asylum and related relief, he testified that he fears returning to El Salvador because of his criminal history and because the Salvadoran police have his picture, name, and address, and have registered him as a gang member.

Finding the respondent and his expert witness credible, the Immigration Judge found that the respondent had established past persecution on account of his membership in the cognizable particular social group of "perceived Salvadoran gang members."  The Immigration Judge found DHS had not met its burden to rebut the presumption of a well-founded fear of future persecution and, as the respondent merited a favorable exercise of discretion, she granted the respondent asylum and declined to reach the other applications.  On appeal, DHS only challenges the Immigration Judge's finding that the proposed particular social group of perceived gang members is cognizable.

## II. ANALYSIS

An applicant seeking asylum or withholding of removal based on his or her membership in a particular social group must "establish that the group is (1) composed of members who share a common immutable characteristic, (2) defined with particularity, and (3) socially distinct within the society in question." *Matter of M-E-V-G-*, 26 I&N Dec. 227, 237 (BIA 2014); *accord Amaya v. Rosen*, 986 F.3d 424, 427 (4th Cir. 2021).  The question of whether a group is a "particular social group" within the meaning of the INA is a

270

question of law that we review de novo.  *See Del Carmen Amaya-De Sicaran v. Barr*, 979 F.3d 210, 214 (4th Cir. 2020); *Matter of W-Y-C- & H-O-B-*, 27 I&N Dec. 189, 191 (BIA 2018); 8 C.F.R. § 1003.1(d)(3)(ii) (2025).

## A. Perceived Salvadoran Gang Members

Upon de novo review, we hold that the respondent's proposed particular social group, defined as "perceived Salvadoran gang members," is not cognizable within the meaning of the INA.  In doing so, we reaffirm our precedent decision in *Matter of E-A-G-*, 24 I&N Dec. 591 (BIA 2008), which remains controlling in the United States Court of Appeals for the Fourth Circuit, in whose jurisdiction this case arises.  *See Amaya*, 986 F.3d at 436 (declining to analyze *Matter of E-A-G-*).  In *Matter of E-A-G-*, we held that "membership in a criminal gang cannot constitute a particular social group, [so] the respondent cannot establish particular social group status based on the incorrect perception by others that he is a gang member."  24 I&N Dec. at 596.

The alien in *Matter of E-A-G-*, like the respondent here, was not a member of a gang, but we nonetheless concluded that perceived membership in a gang could not support a claim for asylum or withholding of removal.  *See Matter of E-A-G-*, 24 I&N Dec. at 596.  While we subsequently clarified that our holding in *Matter of E-A-G-* "should not be read as a blanket rejection of all factual scenarios involving gangs," *Matter of M-E-V-G-*, 26 I&N Dec. at 251, at no point have we altered our holding that perceived membership in a gang cannot serve to constitute a cognizable particular social group.

Since we issued our decision in *Matter of E-A-G-*, at least two courts of appeals, the First Circuit and the Ninth Circuit, have rejected our holding in precedential opinions.  *See, e.g.*, *Chavez v. Garland*, 51 F.4th 424, 434 (1st Cir. 2022) ("[W]e are compelled to reject as impermissible *Matter of E-A-G-*'s holding that a group made up of those who are incorrectly perceived to be members of a gang is categorically barred from recognition as a particular social group under the INA."); *Vasquez-Rodriguez v. Garland*, 7 F.4th 888, 897–98 (9th Cir. 2021) (concluding that "the approach set forth in *Matter of E-A-G-* is inconsistent with the requisite fact-based analysis of proposed particular social groups" and distinguishing between groups of actual gang members and those of persons incorrectly perceived to be gang members).[1]  The Immigration Judge relied on these cases as persuasive authority in support of her grant of the respondent's application for asylum.

---

[1]  The Tenth Circuit has similarly rejected our holding in *Matter of E-A-G-*, albeit in a nonprecedential opinion.  *See Escamilla v. Holder*, 459 F. App'x 776, 786 (10th Cir. 2012).

*See generally Matter of U. Singh*, 25 I&N Dec. 670, 672 (BIA 2012) ("We apply the law of the circuit in cases arising in that jurisdiction, but we are not bound by a decision of a court of appeals in a different circuit."). In each case, the court of appeals held that the Board could not categorically find that perceived gang membership is not cognizable, but neither considered the social groups before them, instead remanding for the Board to consider the groups on a case-by-case basis. *See Chavez*, 51 F.4th at 434; *Vasquez-Rodriguez*, 7 F.4th at 897–98. While neither the First nor the Ninth Circuit definitively held in either opinion that a group based on perceived gang membership was legally cognizable, both concluded that we had too stringently applied our approach in *Matter of E-A-G-* and remanded for further consideration of the specific facts of each claim presented. *See Chavez*, 51 F.4th at 434; *Vasquez-Rodriguez*, 7 F.4th at 897–98.

Both the Fourth Circuit and the Board have concluded that gang members do not constitute a cognizable particular social group. *See Martinez v. Holder*, 740 F.3d 902, 912 (4th Cir. 2014); *Matter of E-A-G-*, 24 I&N Dec. at 596. Thus, to warrant asylum, the respondent needs to demonstrate that a group composed of *perceived* gang members satisfies the immutabilty, particularity, and social distinction requirements for a cognizable group. *See Matter of M-E-V-G-*, 26 I&N Dec. at 237.

We are not persuaded that perceived membership in a gang satisfies the immutability requirement for a cognizable particular social group. An immutable characteristic is one that a person cannot change or should not be required to change because it is fundamental to an individual's identity or consciousness. *See Martinez*, 740 F.3d at 910; *Matter of E-A-G-*, 24 I&N Dec. at 593. Whether a person is perceived as a gang member can change based on a variety of factors, including the person's age, changes in appearance, or changes in residence location.

A proposed group of perceived gang members also lacks social distinction. "Social distinction refers to social recognition." *Matter of M-E-V-G-*, 26 I&N Dec. at 240. Thus, to satisfy the social distinction requirement based on one's perceived membership in a group, an alien would need to demonstrate that those perceived as members are recognized as a group separate and apart from those who are actually members of the group. The respondent has not established here that Salvadoran society would view individuals perceived to be gang members as a group separate from actual gang members. In fact, we cannot imagine any situation in which a society would recognize perceived members of a group as a distinct group.

Finally, a perceived group is not particular. It would be difficult, if not impossible, to explain what elements bring a person into the ambit of perceived group membership, as this would likely be defined by the opinion of the persecutor. Other than stating that he was once perceived as a gang member because of the neighborhood in which he lived, the respondent has not shown what traits would cause a person to be included in this perceived group. If living in a particular neighborhood caused the misperceptions the respondent encountered, then the group to which he belongs would more accurately be defined as persons living in his neighborhood. In other words, the misperception cannot be the defining characteristic of a cognizable particular social group, as the misperception must be based upon some other defining characteristic or characteristics.

For the reasons discussed, perceived membership in a group cannot itself be a cognizable particular social group. Rather, the underlying group is the true particular social group, and where that underlying group as defined is not cognizable, the perceived group is also not cognizable.

Our approach in *Matter of E-A-G-*, and our reaffirmance of it here, is consistent with recent Fourth Circuit cases that address the specific elements of the cognizability analysis. For example, in *Nolasco v. Garland*, 7 F.4th 180, 189–90 (4th Cir. 2021), the Fourth Circuit detailed the difficulties in discerning whether "former" gang membership is socially distinct from "active" gang membership, given the record evidence in the case suggested the relevant country's society did not necessarily perceive the two groups as distinct. A similar concern applies here. The crux of the respondent's proposed group in this case inherently relies on a perception that the affected individuals are gang members, raising the question of whether a society perceives them as part of a group of gang members instead of perceiving them as part of a group of perceived gang members. This essentially obviates the distinction between the perceived group and the underlying group of gang members, which is not cognizable. For this reason, among others, to establish eligibility for relief based on a group of individuals perceived to be members of an underlying group, a respondent must show that the underlying group can stand alone as a cognizable particular social group.

Similarly, the Fourth Circuit has cautioned against conflating the analyses for particularity and an individual's ability to establish membership in the proposed group. *See Amaya*, 986 F.3d at 435. In doing so, the Fourth Circuit drew a distinction between a defining characteristic that may have gradations, such as former membership in a gang, and other "amorphous" defining characteristics such as "wealth" or "opposition to gangs," with the

latter category lacking cognizability. *Id.* In its analysis in *Amaya*, the Fourth Circuit utilized an instructive tennis analogy to explain that the guiding question for adjudicators in the particularity inquiry was merely to determine whether there are "clear lines that indicate when a ball is in or out." *Id*. Whether a line can be drawn to gauge if a person is within the boundaries of a group is therefore perhaps best characterized as a litmus test of amorphousness.

Applied here, there exist few, if any, "objective goalposts" to draw a boundary line between actual gang members and perceived gang members such that the latter group is no longer subjective and amorphous but is instead sufficiently particular. *Id.* The respondent's proposed group cannot satisfy the particularity requirement largely because it is dependent on the persecutor's perception, such that its boundary lines are subjective and essentially undefinable.

Finally, we note that neither the INA nor the regulations contain a protected category for "imputed" or "perceived" particular social groups as protected grounds. *See* INA § 101(a)(42)(A), 8 U.S.C. § 1101(a)(42)(A) (2018). In fact, the plain language of the INA does not include the term "imputed" as a modifier for any of the protected grounds. *See id*. The addition of "perceived" or "imputed" has no statutory authority and does not create a cognizable group from a noncognizable one.

We ultimately reaffirm our holding in *Matter of E-A-G-* that perceived gang membership cannot serve as a cognizable protected ground. In reaffirming that holding, we also emphasize that the cognizability of perceived groups is dependent on the existence of an underlying group that is legally cognizable. This is especially true given the intertwined nature of the particularity and social distinction elements between the perceived group and the underlying group. As such, we now hold that perceived or imputed membership in a proposed particular social group will only satisfy the particular social group requirements if the underlying group of which the respondent is perceived to be a member is, standing alone, sufficiently cognizable.

Both the courts of appeals and the Board have issued decisions categorically rejecting certain proposed groups. *See, e.g.*, *Martinez*, 740 F.3d at 912 (explaining that current gang members will not constitute a cognizable particular social group); *Toussaint v. Att'y Gen. of U.S.*, 455 F.3d 409, 418 (3d Cir. 2006) ("[F]or purposes of the INA, criminal deportees are not recognized as a social group."); *Bastanipour v. INS*, 980 F.2d 1129, 1132 (7th Cir. 1992) ("[W]e have no doubt that drug traffickers are not the sort of

'particular social group' to which the provision on asylum refers."); *Matter of K-E-S-G-*, 29 I&N Dec. 145, 151 (BIA 2025) (holding groups defined solely by sex and nationality are not cognizable); *Matter of W-G-R-*, 26 I&N Dec. 208, 223 (BIA 2014) (holding that groups based on deportee status lack cognizability), *vacated on other grounds sub nom. Reyes v. Lynch*, 842 F.3d 1125 (9th Cir. 2016). Thus, while an adjudicator should normally engage in a case-by-case determination of an alien's proposed particular social group, as we do here, it is not inappropriate to rely on established precedent in concluding that certain proposed groups are categorically not cognizable. *See Gonzalez-Veliz v. Barr*, 938 F.3d 219, 232 (5th Cir. 2019) ("As an adjudicatory body, the BIA necessarily relies on established precedents to decide matters pending before it and to avoid re-inventing the wheel every time.").

## B. Additional Protected Grounds

Given the grant of asylum, the Immigration Judge did not reach the question of whether the respondent's additional proposed particular social groups, defined as "perceived Salvadoran members of the MS-13" and "Salvadoran tattooed men" were cognizable. "Perceived Salvadoran members of the MS-13" lacks cognizability for the same reasons, articulated above, that the broader group of "perceived Salvadoran gang members" lacks cognizability. We reiterate the point that, because the underlying group of "Salvadoran gang members" is not cognizable, the perceived version of such a group thus cannot be found legally cognizable. The added qualifying characteristic of membership in a specific gang, i.e., MS-13, does not remedy the deficiencies that preclude the cognizability of the broader group.

The second proposed group defined as "Salvadoran tattooed men" is also not cognizable, as it lacks immutability. Tattoos are neither fundamental to a person's identity or conscience nor beyond one's power to change. *See Romero v. Garland*, No. 20-1417, 2022 WL 910912, at *4 (4th Cir. Mar. 29, 2022) ("We conclude that the tattoos are also not beyond his power to change. . . . The presence of tattoos on one's body is indisputably subject to change, and as such a group defined on their presence cannot satisfy the immutability requirement."); *see also Castellano-Chacon v. INS*, 341 F.3d 533, 549 n.9 (6th Cir. 2003) (acknowledging that tattoos may be removable).

The Immigration Judge also did not analyze the respondent's claim regarding an actual or imputed anti-gang political opinion.[2]   The respondent's political opinion claim similarly fails as a matter of law. Mere opposition to gangs and/or gang recruitment generally cannot establish persecution on account of a protected ground. *See Cortez-Mendez v. Whitaker*, 912 F.3d 205, 210 (4th Cir. 2019) ("Flight from gang recruitment is not a protected ground under the INA."); *Zelaya v. Holder*, 668 F.3d 159, 166–67 (4th Cir. 2012) (rejecting a particular social group based on opposition to gang recruitment). Likewise, the Board has repeatedly rejected claims of persecution on account of an anti-gang political opinion where there is no evidence that the gangs targeted the alien on account of his or her political or ideological opposition to the gang or gang activity. *See Matter of J-J-G-*, 27 I&N Dec. 808, 815 (BIA 2020); *Matter of S-E-G-*, 24 I&N Dec. 579, 589 (BIA 2008); *see also Pacas-Renderos v. Sessions*, 691 F. App'x 796, 802 (4th Cir. 2017) (holding that the agency reasonably concluded that gang members did not threaten the alien on account of any imputed anti-gang political opinion). As we explained in *Matter of E-A-G-*, 24 I&N Dec. at 596–97, a refusal to join a gang, as well as any resulting harm from such a refusal, will not, without more, constitute persecution on account of a political opinion. We reaffirm that conclusion here. Ultimately, the respondent cannot establish eligibility for asylum or withholding of removal based on an actual or imputed anti-gang political opinion.

## III. CONCLUSION

The respondent has not demonstrated that he is a member of a cognizable particular social group or has otherwise experienced or fears harm on account of a protected ground. He therefore cannot establish eligibility for asylum based on past persecution or a well-founded fear of future persecution. Moreover, because withholding of removal likewise requires fear of harm on account of a protected ground, the respondent cannot establish eligibility for withholding of removal under the INA. *See Madrid-Montoya v. Garland*, 52 F.4th 175, 179 (4th Cir. 2022).

Based on the foregoing, we will sustain DHS' appeal and vacate the Immigration Judge's decision granting the respondent asylum. We will remand the record solely for the Immigration Judge to determine whether the

---

[2]   The respondent asserted in his pre-hearing brief before the Immigration Judge that he feared persecution on account of his actual or imputed anti-gang political opinion, although he did not expand upon this argument.

respondent has established eligibility for protection under the regulations implementing the Convention Against Torture.[3]

**ORDER:** DHS' appeal is sustained.

**FURTHER ORDER:** The Immigration Judge's December 16, 2024, decision is vacated, and the record is remanded to the Immigration Judge for further proceedings consistent with the foregoing order and for the entry of a new decision.

---

[3] The Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, Dec. 10, 1984, S. Treaty Doc. No. 100-20, 1465 U.N.T.S. 85 (entered into force for United States Nov. 20, 1994).  8 C.F.R. § 1208.16(c) (2025); 8 C.F.R. § 1208.18(a) (2020).